Sue FORMAN, Plaintiff–Appellant,

v.

Mark N. BROWN, d/b/a Brown's Royal Gorge Rafting, Brown's Fort and Greg Scott, Defendants–Appellees.

No. 95CA1380.

Colorado Court of Appeals,
Div. B.

Nov. 29, 1996.

Rehearing Denied Feb. 6, 1997.

Certiorari Denied Oct. 20, 1997.

Gregory J. Hock, Colorado Springs, for Plaintiff–Appellant.

Hall & Evans, L.L.C., Alan Epstein, Denver, for Defendants–Appellees.

Opinion by Judge NEY.

Plaintiff, Sue Forman, appeals from a summary judgment entered in favor of defendants, Mark N. Brown d/b/a Brown's Royal Gorge Rafting and Brown's Fort, and Greg Scott. We affirm.

Plaintiff participated in a rafting trip conducted by defendants. During the trip, defendant Scott, the river guide, pulled the raft off the river for a rest break and suggested

that the participants take a swim in the river. Scott led some of the participants, including plaintiff, to a large boulder near the river and instructed them on the proper method to enter the water. Plaintiff injured her ankle when she jumped into the river.

Plaintiff brought this action alleging negligence, willful and wanton conduct, and breach of contract. Defendants moved for partial summary judgment on the grounds that the exculpatory agreement executed by plaintiff before the trip absolved them from liability for negligence as a matter of law. The trial court granted defendant's motion for partial summary judgment, and later granted defendants' motion for summary judgment on plaintiff's remaining claims. This appeal followed.

## I.

Plaintiff argues that summary judgment was improper because a genuine issue of fact existed as to whether she was mentally competent when she signed the exculpatory agreement. We disagree.

Summary judgment is proper when the pleadings, affidavits, depositions, and admissions show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56; *Civil Service Commission v. Pinder*, 812 P.2d 645 (Colo.1991).

The moving party has the burden to show that there is no issue of material fact. Once the moving party has met its initial burden, the burden then shifts to the nonmoving party to establish that there is a triable issue of material fact. *Mancuso v. United Bank*, 818 P.2d 732 (Colo.1991).

In determining whether summary judgment is proper, the nonmoving party must receive the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts. *Mancuso v. United Bank, supra.* Summary judgment is proper if reasonable persons could not reach differing conclusions. *Morlan v. Durland Trust Co.*, 127 Colo. 5, 252 P.2d 98 (1952).

In their motion for summary judgment, defendants attached the exculpatory agreement, which was signed by plaintiff, entitled "Agreement to Participate (Acknowledgment of Risks)," and an agreement entitled "On River Prohibitions," also signed by plaintiff, which listed rules that rafting participants were required to follow while on the rafts. Defendants also included plaintiff's admissions that she signed the exculpatory agreements and that she was advised concerning the hazards involved in the raft trip. With this evidence, defendants established both the scope of the exculpatory agreement and the fact that plaintiff signed the agreement, and thus the burden shifted to plaintiff to establish triable issues of fact. *Mancuso v. United Bank, supra.*

■ Plaintiff admitted in her response to the summary judgment motion that she had signed the exculpatory agreement and she attached to her response an affidavit in which she stated:

> I believe I am an intelligent woman and I understand the (prohibition.) My failure to read the Agreement to Participate was related to my mental condition.

> . . . .

> Although I was not incompetent when I signed the on-river prohibitions and the Agreement to Participate, I do feel I lacked competency in the skills of independent decision-making and that I had mental impairment on relying on what Mr. Scott had advised.

Plaintiff also averred that she had been in therapy for several years before the incident, and included extensive documentation of the diagnosis and in-patient treatment of her emotional and mental condition that she underwent six months after the rafting incident. However, plaintiff's complaint did not state any allegations of her impaired mental capacity.

Plaintiff filed a supplementary response to the summary judgment motion which included an affidavit from the therapist who had been treating her for several years prior to the rafting incident wherein the therapist stated that, at the time of the rafting trip, plaintiff was suffering from a mental impairment, "including a mental and/or emotional disability related to psychiatric problems, her

inability to handle stress, emotional illness and severe psychiatric difficulties and serious emotional disturbances which prevented her from fully assessing the consequences of risks or prohibited conduct related to jumping into the river." The therapist further opined that plaintiff had a tendency "to be quite vulnerable following the direction of someone she was trusting as well as to following the actions of those with whom she desired to be a part."

Plaintiff also supplemented her response with an affidavit from a therapist who began treating her a year after the rafting incident in which the therapist averred that, at the time of the rafting incident, plaintiff's need to be liked and accepted was likely to have caused her to suspend her own judgment in deference to others.

The trial court held that, even under the most favorable interpretation of the evidence, plaintiff did not show that she was incompetent to enter into a binding contract. Relying on plaintiff's specific assertion that she was not incompetent when she signed the exculpatory agreements, the court found that plaintiff's assertions of mental impairment, such as her need to belong to a group and her need to trust and follow the river guide, did not at all relate to her execution of a binding contract.

We agree with the trial court and find that the relevant evidence established, as a matter of law, that plaintiff was not, under principles of competency applicable to contracts in general, incompetent at the time she signed the exculpatory agreement.

▪ Every person is presumed by the law to be sane and competent for the purpose of entering into a contract. *Hanks v. McNeil Coal Corp.*, 114 Colo. 578, 168 P.2d 256 (1946). A party can be insane for some purposes and still have the capacity to contract. *Davis v. Colorado Kenworth Corp.*, 156 Colo. 98, 396 P.2d 958 (1964).

▪ A person is incompetent to contract when the subject matter of the contract is so connected with an insane delusion as to render the afflicted party incapable of understanding the nature and effect of the agreement or of acting rationally in the

transaction. *Hanks v. McNeil Coal Corp.*, *supra.* Therefore, under this rule, it follows that emotional distress or severe mental depression generally is insufficient to negate the capacity to contract. *See Drewry v. Drewry*, 8 Va.App. 460, 383 S.E.2d 12 (1989)(severe mental depression did not render party to separation agreement legally incompetent where there was no evidence that party did not understand the nature and consequences of her acts).

▪ Moreover, a contract may not be voided when, as here, the alleged incompetence arose after the execution of the contract. Competency to contract is determined by a party's mental state at the time of execution of the agreement. *See Hanks v. McNeil Coal Corp., supra.*

Where a party has failed to present sufficient evidence to make out a triable issue of material fact, the moving party is entitled to summary judgment. *See Continental Air Lines Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987).

Plaintiff admitted that she was not incompetent at the time she signed the exculpatory agreement, that she was "an intelligent woman," and that she understood the "prohibition." Additionally, none of plaintiff's evidence of her psychological diagnosis and treatment showed that, at the time she signed the exculpatory agreements, she was suffering under an insane delusion that prevented her from understanding the nature and effect of the agreements or of acting rationally in the transaction.

Nor do we agree with plaintiff's claim that her impaired mental capacity caused her to fail to read the Agreement to Participate. As noted above, plaintiff admitted that she was not incompetent when she signed the exculpatory agreements; therefore, her failure to read the Agreement to Participate precludes her from arguing that she is not bound by it. *See Rasmussen v. Freehling*, 159 Colo. 414, 412 P.2d 217 (1966)(in the absence of fraud, one who signs a contract without reading it is barred from claiming she is not bound by what she has signed); *Cordillera Corp. v. Heard*, 41 Colo.App. 537, 592 P.2d 12 (1978), *aff'd*, 200 Colo. 72, 612

P.2d 92 (1980)(party signing an agreement is presumed to know its contents).

We conclude, therefore, that plaintiff failed to establish a triable issue of fact concerning her capacity to execute a contract at the time she signed the exculpatory agreement.

## II.

Plaintiff also argues that the exculpatory agreement was invalid and ambiguous as to whether it applied to the activity in which she was injured. We disagree.

■ The determination of the sufficiency and validity of an exculpatory agreement is a matter of law for the court to determine. *Jones v. Dressel,* 623 P.2d 370 (Colo.1981).

■ The validity of an exculpatory agreement must be determined by the following four criteria: (1) the existence of a duty to the public; (2) the nature of the service performed; (3) whether the contract was fairly entered into; and (4) whether the intention of the parties is expressed in clear and unambiguous language. *Jones v. Dressel, supra.*

■ Only the fourth factor is at issue here, and as to this factor, the supreme court has held that in order for an exculpatory agreement to shield a party from liability, the intent of the parties to extinguish liability must be clearly and unambiguously expressed. *Heil Valley Ranch, Inc. v. Simkin,* 784 P.2d 781 (Colo.1989).

The Agreement to Participate provided in relevant part:

> I am aware that the activities I am participating in, under the arrangements of Brown's Fort family recreation center; its agents, employees, and associates, involves certain inherent risks. I recognize that white water rafting, ... and other activities, scheduled or unscheduled have an element of risk which combined with the forces of nature, acts of commission, or omission, by participants or others, can lead to injury or death.
>
> I also state and acknowledge that the hazards include, but are not limited to the loss of control, collisions with rocks, trees and other man made or natural objects, whether they are obvious or not obvious, flips, immersions in water, hypothermia, and falls from vessels, vehicles, animals, or on land.
>
> I understand that any route or activity, chosen as a part of our outdoor adventure may not be the safest, but has been chosen for its interest and challenge.... I ... understand and agree that any bodily injury, death or loss of personal property, and expenses thereof, as a result of my ... participation in any scheduled or unscheduled activities, are my responsibility. I hereby acknowledge that I and my family ... have voluntarily applied to participate in these activities. I do hereby agree that I and my family ... are in good health with no physical defects that might be injurious to me and that I and my family are able to handle the hazards of traffic, weather conditions, exposure to animals, walking, riding, and all and any similar conditions associated with the activities we have contracted for.
>
> . . . .
>
> I and my family ... agree to follow the instructions and commands of the guides, wranglers, and others in charge at Brown's Fort recreation center with conducting activities in which I and my family are engaged.
>
> Further, and in consideration of, and as part payment for the right to participate in such trips or other activities ... I have and do hereby assume all the above risks and will hold Brown's Fort ... its agents, employees, and associates harmless from any and all liability, action, causes of action, debts, claims, and demands of any kind or nature whatsoever which I now have or which may arise out of, or in connection with, my trip or participation in any other activities.
>
> The terms of this contract shall serve as a release and assumption of risk for my heirs, executors and administers and for all members of my family, including any minors accompanying me....
>
> I have carefully read this contract and fully understand its contents. I am aware

that I am releasing certain legal rights that I otherwise may have and I enter into this contract in behalf of myself and my family of my own free will.

Plaintiff was engaged in an apparently unscheduled activity that had an element of risk which, combined with the forces of nature and acts of others, resulted in an injury. The language of the Agreement to Participate specifically addressed a risk, collision with boulders, that adequately described the circumstances of plaintiff's injury, and by executing the Agreement to Participate, plaintiff was specifically made aware of and agreed to assume this risk. *See Heil Valley Ranch, Inc. v. Simkin, supra* (broad language in a release interpreted to cover all negligence claims); *Barker v. Colorado Region–Sports Car Club of America, Inc.,* 35 Colo.App. 73, 532 P.2d 372 (1974) (in absence of duty to public, exculpatory agreements are valid when fairly made and may be enforced to preclude recovery for injury sustained by patrons of recreational facilities).

Therefore, we agree with the trial court that the Agreement to Participate unambiguously released defendants from liability for injuries occurring during associated scheduled or unscheduled activities such as the swimming activity here at issue.

### III.

Plaintiff's final contention is that the trial court erred in dismissing her claim of willful and wanton conduct against defendant Scott. We disagree.

■ An exculpatory agreement does not bar an action based upon injuries sustained by a defendant's willful and wanton conduct. *Barker v. Colorado Region–Sports Car Club of America, Inc., supra.* Willful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others. Such conduct extends beyond mere unreasonableness. *Terror Mining Co. v. Roter,* 866 P.2d 929 (Colo.1994) (applying definition of willful and wanton conduct to parental immunity doctrine); *see also* § 13–21–102(1)(b), C.R.S. (1987 Repl.Vol. 6A)(for purposes of exemplary damages, willful and wanton conduct

means conduct purposefully committed which the actor must have realized as dangerous and which was done heedlessly and recklessly, without regard to the consequences, or of the rights and safety of others, particularly the plaintiff).

■ Although the issue of whether a defendant's conduct is purposeful or reckless is ordinarily a question of fact, *Wolther v. Schaarschmidt,* 738 P.2d 25 (Colo.App.1986), if the record is devoid of sufficient evidence to raise a factual issue, then the question may be resolved by the court as a matter of law. *See Continental Air Lines, Inc. v. Keenan, supra.*

■ Plaintiff's complaint alleged only that defendant Scott "beached the raft with Plaintiff and other guests, subsequently inviting, encouraging and directing Plaintiff and other guests to jump into the river and take a swim, directing them to a point of jumping that Scott represented as being safe for entry." Plaintiff also gave a statement in which she said that, prior to the swim, defendant Scott reinforced the possibility of being hurt while jumping into the river but that he instructed the group on the proper manner of entry to avoid injury, and talked and stood close to the participants while they jumped.

Additionally, plaintiff stated in one of her affidavits:

Scott was with all of us monitoring the entry into the river. He gave brief instructions that we should try to jump with our feet up and keep our feet downstream and paddle to the shore. Although the possibility of being hurt existed, this clearly related to after we went downstream and tried to negotiate the river current and swim to the side of the river. I did not believe there were any safety problems in entering the water at the place he designated, nor could I see any submerged rocks.

. . . .

A couple jumped in before me and everything worked out fine. Their experience was consistent with what Scott had stated that if we followed his direction we would not get hurt.

. . . .

I feel that Scott was negligent in his suggesting the jumping and his preparing us and instructing us for that exercise.

Plaintiff's evidence is insufficient to establish a factual question as to whether defendant Scott acted in a willful and wanton manner. Plaintiff's statements that Scott instructed the participants on the proper manner to enter the water to avoid injury indicates that Scott did not consciously and willfully disregard the safety of the participants. Furthermore, plaintiff does not allege, nor does the record indicate, that Scott recklessly forced the participants to jump in the river or otherwise intentionally disregarded the participants' safety. Rather, plaintiff states in her affidavit that Scott acted negligently. Negligence is not the same as willful or wanton conduct. *Pettingell v. Moede*, 129 Colo. 484, 271 P.2d 1038 (1954).

Therefore, the court properly entered summary judgment in defendant Scott's favor. *See Mancuso v. United Bank, supra.*

The judgment is affirmed.

PIERCE,* J., concurs.

TURSI,* J., concurs in part and dissents in part.

Judge TURSI concurring in part and dissenting in part.

I concur in Parts I and III of the majority opinion and dissent as to Part II.

This matter is before us on summary judgment. The majority adequately sets forth the rules governing review of summary judgments. However, as to Part II, it misapplies them.

In Part II, the majority concludes that the documents which defendant had plaintiff execute were unambiguous. I disagree.

Plaintiff was presented with two documents by the defendants and was required to execute them simultaneously. These are the Agreement to Participate, quoted at length in the majority opinion, and the On River Prohibitions, which although mentioned, are not quoted.

It is axiomatic that if simultaneously executed agreements between the same parties and relating to the same subject matter are contained in more than one instrument, the documents must be construed together. *Bledsoe v. Hill*, 747 P.2d 10 (Colo.App.1987).

The On River Prohibitions contained a prohibition that stated: "No diving or jumping into the river. (There are rocks under the surface of the river)."

By affidavit and by a statement appended to defendant's motion for summary judgment, facts were presented that the guide had instructed plaintiff to "jump in" the river. In plaintiff's affidavit (referred to by the majority), plaintiff further stated that the guide "indicated that we should jump into the water at that point."

Plaintiff correctly argues that she was confronted with the requirement that she follow the instruction of the guide as required by the Agreement to Participate, but that this conflicted with a specific provision of the On River Prohibitions. The patently conflicting provision was, at a minimum, ambiguous and placed plaintiff in a situation that gave rise to a genuine issue of material fact. *See Heil Valley Ranch, Inc. v. Simkin, supra; Jones v. Dressel, supra.*

Clearly, the provision in the Agreement to Participate stating that participants "agree to follow the instruction . . . of the guides" creates a conflict when a participant is instructed by the guide to violate the specific prohibition against jumping into the river. Under these circumstances, an ambiguity arises which creates a genuine issue of material fact and thus, renders the entry of summary judgment reversible error.

Finally, after giving the entire agreement a fair reading, I am unable to comprehend how the majority can conclude that a prohibited activity is a foreseeable "unscheduled"

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3), and § 24–51–1105, C.R.S. (1996 Cum.Supp.).

activity. *See Heil Valley Ranch, Inc. v. Sim-kin, supra.*

Therefore, in view of the ambiguity that arose under the documents based upon the material facts herein, I would reverse and remand to the trial court to proceed on the issues addressed in Part II of the majority opinion.