2013 COA 34

**ENGEMAN ENTERPRISES, LLC,**
**Plaintiff–Appellant,**

v.

**TOLIN MECHANICAL SYSTEMS COMPANY, Defendant–Appellee.**

**No. 12CA0450**

Colorado Court of Appeals,
Div. V.

Announced March 14, 2013

366

Larimer County District Court, No. 09CV1278, Honorable John David Williams, Judge

Dworkin Chambers Williams York Benson & Evans, Steven G. York, Gary J. Benson, Denver, Colorado, for Plaintiff–Appellant

Lasater & Martin, P.C., J. Scott Lasater, April D. Moore, Highlands Ranch, Colorado, for Defendant–Appellee

Opinion by JUDGE TERRY

¶ 1 This case involves issues of first impression that require us to interpret the scope and applicability of Colorado's economic loss rule. We affirm the trial court's entry of summary judgment against plaintiff, Engeman Enterprises, LLC, and in favor of defendant, Tolin Mechanical Systems Company.

## I. Background

¶ 2 For purposes of reviewing the summary judgment, we construe the facts in the light most favorable to plaintiff, the nonmoving party. *West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002). Viewed in that light, the following facts are presumed true.

¶ 3 Plaintiff operates a cold storage facility, which is cooled by an ammonia-charged cooling system. Defendant designs, installs, maintains, and repairs cooling systems. On June 27, 2008, when high oil temperatures compromised plaintiff's cooling system, defendant was called in for an emergency repair.

¶ 4 Defendant inspected the system and recommended adding ammonia to lower the temperature. While defendant began this work, plaintiff's representatives signed two agreements—a Service Report and a Refrigerant Report—which both stated that defendant would perform its work in a "prudent and workmanlike manner," and which disclaimed defendant's liability beyond repairing issues caused by defective workmanship.

¶ 5 Defendant's employee attached a portable tank filled with ammonia to the cooling system, with the intent to transfer ammonia from the tank to the system. But the employee actually caused ammonia from the cooling system to flow backward into the tank. Several hours later, the tank overfilled and exploded, permeating the cold storage facility with ammonia and resulting in cleanup costs, repair costs, and lost profits totaling hundreds of thousands of dollars.

¶ 6 Plaintiff alleged claims against defendant for negligence, vicarious liability, and negligent supervision, but did not bring a claim for breach of contract. In ruling on defendant's motion for summary judgment, the trial court concluded, based on the undisputed facts, that plaintiff and defendant had formed a contract for repair services, the exact terms of which were disputed. The court stated that the parties might be bound by the express terms of the Service Report or the Refrigerant Report, but concluded that even if those terms were not binding, the parties had nevertheless entered into an oral contract for defendant's services.

¶ 7 The court then ruled that defendant's duty of care under the contract, whether that duty was express or implied, was identical to the tort duty of care which plaintiff alleged had been breached. The court thus concluded that defendant did not owe plaintiff an independent duty of care, and it entered summary judgment on plaintiff's tort claims because they were barred by the economic loss rule.

¶ 8 The trial court also ruled that plaintiff's allegation that defendant had engaged in willful and wanton conduct did not affect the application of the economic loss rule, because plaintiff did not assert a claim for willful and wanton breach of contract, and there is no independent tort cause of action for "willful and wanton conduct." The court then entered summary judgment in favor of defendant on all of plaintiff's claims.

## II. Discussion

¶ 9 Plaintiff argues that its tort claims against defendant are not barred by the economic loss rule for the following reasons: (1) defendant owed it an independent duty of care to safely handle ammonia, (2) the damage that its facility sustained is physical harm to property and not "economic loss," (3) defendant owed it an independent duty of care to supervise and train the employees handling ammonia, (4) the economic loss rule should not apply to service contracts, and (5) defendant's allegedly willful and wanton tortious conduct precludes application of the economic loss rule. We consider and reject each argument in turn.

## A. Standard of Review

¶ 10 Summary judgment is a drastic remedy and should be granted only when the pleadings and supporting documentation demonstrate that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *West Elk Ranch*, 65 P.3d at 481; *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 290 (Colo.App.2009). The nonmoving party receives the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact are resolved against the moving party. *West Elk Ranch*, 65 P.3d at 481.

¶ 11 We review summary judgments de novo. *Hamon Contractors*, 229 P.3d at 290. Because the application of the economic loss rule is a question of law, we also review de novo whether that rule bars plaintiff's tort claims. *Makoto USA, Inc. v. Russell*, 250

P.3d 625, 627 (Colo.App.2009); *Hamon Contractors*, 229 P.3d at 290; *Rhino Fund, LLLP v. Hutchins*, 215 P.3d 1186, 1193 (Colo.App.2008).

## B. Economic Loss Rule

¶ 12 "The economic loss rule 'maintain[s] the boundary between contract law and tort law.'" *Makoto*, 250 P.3d at 627 (quoting *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo.2000)). In *Town of Alma*, the supreme court distinguished between duties owed under contract law and tort law, stating, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." 10 P.3d at 1264. The focus on duty is paramount because "the relationship between the type of damages suffered and the availability of a tort action is inexact at best." *Id.* at 1263.

¶ 13 Three factors guide our determination of the source of the duty at issue. We must consider "(1) whether the relief sought in negligence is the same as the contractual relief; (2) whether there is a recognized common law duty of care in negligence; and (3) whether the negligence duty differs in any way from the contractual duty." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004) (citing *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269–70 (Colo.2000)).

## C. Analysis

### 1. Independent Duty

¶ 14 Because our economic loss rule jurisprudence turns on "the source of the duty that forms the basis of the action," *Town of Alma*, 10 P.3d at 1262, we begin our analysis by considering the contention that defendant owed plaintiff an independent duty of care to safely handle anhydrous ammonia. Plaintiff argues that defendant owed it an independent duty of care because, under the three *BRW* factors, defendant's common law duty of care to safely handle anhydrous ammonia was separate and distinct from its duty of care under either express or implied contract terms. We are not persuaded.

¶ 15 The first *BRW* factor compels us to compare the relief sought in negligence to the relief sought in contract. 99 P.3d at 74. Although plaintiff argues that the damages it seeks are tort damages and not contract damages, we disagree. Setting aside any limitation-of-liability provisions that might apply to either the Service Report or the Refrigerant Report, had plaintiff pursued a breach of contract claim, it could have claimed costs to clean up and repair the physical damage to its property as consequential damages for breach of contract. Such consequential damages would provide the same relief plaintiff could have gotten had it pursued a negligence claim, which, like a claim for consequential damages based on contract, requires proof of reasonable foreseeability of the damages. *See Giampapa v. Am. Family Mut. Ins. Co.*, 64 P.3d 230, 237 n.3 (Colo.2003) (" '[C]onsequential damages' [for breach of contract] are ... *foreseeable* damages within the *reasonable contemplation* of the parties at the time the contract was made." (emphasis added)); *Connes v. Molalla Transp. Sys., Inc.*, 831 P.2d 1316, 1320 (Colo.1992) ("A duty of *reasonable care* [in tort] arises when there is a *foreseeable* risk of injury to others from a defendant's failure to take protective action to prevent the injury." (emphasis added)).

¶ 16 Our analysis is not altered by plaintiff's argument that the limitation-of-liability clause contained in the Service and Refrigerant Reports would preclude it from obtaining full recovery for consequential damages under contract law. First, we note that plaintiff's argument is inapplicable if the parties entered into an oral contract with implied terms. Second, the terms of the limitation-of-liability clause apply equally to contract *and* tort actions, meaning that plaintiff's recovery is potentially limited by the clause under either theory of recovery. Third, plaintiff could have alleged that defendant committed willful and wanton breach of contract, thus potentially defeating the limitation-of-liability clause and allowing plaintiff to recover the full measure of consequential damages under the contract. *See Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶¶ 15–16, 300 P.3d 963. Fi-

nally, and perhaps most importantly, the fact that the parties may have entered into a contract that would limit consequential damages for this injury is persuasive evidence for application of the economic loss rule, as it demonstrates that the parties *could have* had a remedy in contract for such damages had they chosen not to contractually limit such damages. The mere fact that such damages may have been contractually limited does not allow a party to avoid application of the economic loss rule.

¶ 17 Because the relief sought by plaintiff in negligence is the same as the relief it could have obtained by requesting consequential damages based on a breach of contract, the first *BRW* factor weighs in favor of finding no independent duty of care.

¶ 18 Applying the second *BRW* factor, we must discern whether there is a common law duty of care in negligence. 99 P.3d at 74. The existence and scope of a tort duty is a question of law. *A.C. Excavating v. Yacht Club II Homeowners Ass'n,* 114 P.3d 862, 866 (Colo.2005). Defendant here at least owed plaintiff a duty of reasonable care in handling a hazardous substance. *See Imperial Distribution Services, Inc. v. Forrest,* 741 P.2d 1251, 1254 (Colo.1987). Accordingly, the second *BRW* factor weighs in favor of finding an independent duty of care.

¶ 19 However, in applying the third *BRW* factor, we examine whether the common law duty of care owed by defendant differs from its contractual duty, and we conclude that this factor weighs against finding an independent duty of care. 99 P.3d at 74.

¶ 20 Plaintiff argues that, while the contract required defendant to exercise only reasonable care, defendant was nevertheless required to handle ammonia, a dangerous substance, with the highest degree of care. According to plaintiff, this enhanced degree of care, derived from Colorado decisions involving the handling of electricity and propane gas, is sufficient to create an independent tort duty of care that would preclude application of the economic loss rule.

¶ 21 The supreme court has not ruled on whether handling ammonia requires exercis-ing the highest degree of care. Its cases discussing standards of care for the handling of various dangerous substances do not seem to follow a clear pattern. *Compare Imperial Distribution,* 741 P.2d at 1256 (proper disposal of caustic cleaning liquid containing ingredients designated as hazardous waste by the Environmental Protection Agency does not require highest duty of care), *with Blueflame Gas, Inc. v. Van Hoose,* 679 P.2d 579, 588 (Colo.1984) (supplying propane gas requires highest duty of care) (citing *Herman v. Midland AG Service, Inc.,* 200 Neb. 356, 264 N.W.2d 161 (1978) (applying highest duty of care standard to handling of anhydrous ammonia)).

¶ 22 We conclude that tort law would impose the same standard of care as would contract law for the handling of ammonia.

¶ 23 In *Imperial Distribution,* a negligence case, the supreme court stated that, "under [the] reasonable person standard, 'the greater the risk, the greater the amount of care required to avoid injury to others,'" so that "what constitutes reasonable care varies according to the degree of risk associated with the particular activity." 741 P.2d at 1254 (quoting *Blueflame Gas,* 679 P.2d at 587); *see also Metro. Gas Repair Serv., Inc. v. Kulik,* 621 P.2d 313, 318 (Colo.1980) ("In negligence cases the duty is to use reasonable care in light of the apparent risk.") (citing W. Prosser, *The Law of Torts* 206, 324 (4th ed.1971)). A few activities are so "fraught with peril" that those undertaking them must exercise the highest standard of care. *Imperial Distribution,* 741 P.2d at 1255 (citing *Blueflame Gas,* 679 P.2d 579 (propane gas); *Federal Ins. Co. v. Public Serv. Co.,* 194 Colo. 107, 570 P.2d 239 (1977) (electricity)). But, the supreme court emphasized, the "highest standard of care" does not constitute a distinct legal standard; instead, the highest standard of care is precisely the type of care that a reasonable person would exercise in the limited circumstances presented. *See Imperial Distribution,* 741 P.2d at 1255. This is so because "[i]n every case, the standard of care is always one of reasonable care." *Id.* Thus, under *Imperial Distribution,* the duty of reasonable or ordinary care is commensurate with the activity

undertaken, including those activities so "fraught with peril" that the reasonable duty of care requires the highest standard or degree of care. *See id.* at 1254–55.

¶ 24 We therefore conclude that, under negligence law, defendant owed plaintiff a duty of reasonable care when handling ammonia, irrespective of whether that duty of care required defendant to employ the highest degree of care under the circumstances.

¶ 25 Plaintiff concedes that its contract with defendant required the latter to exercise reasonable care, whether those terms were the express terms contained in the Service Report and Refrigerant Report ("prudent and workmanlike"), or implied terms in an oral contract. We agree. *See Metro. Gas Repair Serv., Inc.,* 621 P.2d at 318 (defendant's contract with plaintiff "gave rise to a common law duty to perform its work with reasonable care and skill"); 23 *Williston on Contracts* § 63:25 (4th ed. 2012) ("[A]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expediency and faithfulness the thing agreed to be done."); *cf. Waterman S.S. Corp. v. Dugan & McNamara, Inc.,* 364 U.S. 421, 423, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960) (equating "warranty to perform the obligations of the contract with reasonable safety" with "warranty of workmanlike service").

¶ 26 Because "what constitutes reasonable care varies according to the degree of risk associated with the particular activity," *Imperial Distribution,* 741 P.2d at 1254, we perceive no difference between any common law negligence duty of care owed by defendant to plaintiff and the standard of care defendant assumed under its contract.

¶ 27 In a case such as this between two commercial entities, to decide otherwise would defeat the principle of risk allocation at the heart of commercial contract law. *See Town of Alma,* 10 P.3d at 1261. Because "contract law is designed to account for the costs and risks" of nonperformance, the economic loss rule lets "parties ... confidently allocate their risks and costs in a bargaining situation" by absolving themselves of tort liability for the breach of a duty owed under the contract. *Id.* Plaintiff's reasoning here would render all contracts for the handling of

hazardous substances susceptible to superseding tort duties, unless those contracts expressly required the highest degree of care. Such a result is incompatible with Colorado's commercial jurisprudence, and would strip commercial service and procurement contracts of their predictability in the allocation of risk. *See East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 872–73, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986) ("Since a commercial situation generally does not involve large disparities in bargaining power ... we see no reason to intrude into the parties' allocation of the risk.").

¶ 28 Because defendant's contractual duty did not differ in any way from any tort duty it owed plaintiff, we conclude that application of the third *BRW* factor weighs in favor of finding no independent duty of care. 99 P.3d at 74.

¶ 29 Considering all three *BRW* factors together, we conclude that defendant did not owe plaintiff a duty of care independent of the contract. Although defendant owed plaintiff a common law duty of care in negligence (the second factor), that duty did not differ from the duty defendant owed plaintiff under the contract (the third factor), and a breach of that duty would allow the same recovery under both tort and contract law (the first factor). *See id.* Accordingly, because a reasonable duty of care owed by defendant was at least implied in the contract, it follows that plaintiff has not shown any duty independent of the contract, and the economic loss rule bars the tort claim and holds the parties to the contract's terms. *See id.*

### 2. The Nature of Plaintiff's Damages

¶ 30 Plaintiff refers us to language from *Town of Alma* stating, "Economic loss is defined *generally* as damages *other than physical harm to* persons or *property.*" 10 P.3d at 1264 (emphasis added). Because the damage here was to plaintiff's property, plaintiff argues that the economic loss rule is inapplicable. Plaintiff further relies for this argument on the division's decision in *Jardel Enterprises, Inc. v. Triconsultants, Inc.,* 770 P.2d 1301, 1304 (Colo.App.1988), which stated

that the economic loss rule "does not prevent a negligence action to recover for physical injury to property." We disagree with plaintiff's argument.

¶ 31 We first note that the supreme court in *Town of Alma* did not state that property damage *never* constitutes economic loss; it merely stated that economic loss "generally" does not include property damage. 10 P.3d at 1264. The situation here is not one of those where property damage is excluded from economic loss damages. Indeed, the Service Report and the Refrigerant Report both addressed whether plaintiff would be able to recover contractual damages for damage to its property.

¶ 32 Moreover, *Town of Alma* and subsequent supreme court cases instruct us to focus on the source of the duty owed to the plaintiff. *See Town of Alma*, 10 P.3d at 1263–64; *id.* at 1262 n.8 ("a more accurate designation of what is commonly termed the 'economic loss rule' would be the 'independent duty rule' "); *Grynberg*, 10 P.3d at 1269 ("The proper focus in an analysis under the economic loss rule is on the source of the duties alleged to have been breached."). *Town of Alma* quotes approvingly a South Carolina case, stating, *"The question ... is not whether the damages are physical or economic.* Rather the question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty [the] plaintiff claims the defendant owed." 10 P.3d at 1262 (emphasis added) (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85, 88 (S.C.1995)). Thus, the language from *Jardel* relied upon by plaintiff—that the economic loss rule "does not prevent a negligence action to recover for physical injury to property," 770 P.2d at 1304—appears to have been abrogated by subsequent supreme court decisions.

¶ 33 As discussed above, there was no independent duty here. Therefore, it makes no difference to our analysis that the damages sought were for property damage.

¶ 34 Finally, as noted above, unless it had contractually agreed to limit such damages, plaintiff could have claimed damage to its property as consequential damages for breach of contract, and thus it would have had an adequate contractual remedy. *See City of Westminster v. Centric–Jones Constructors*, 100 P.3d 472, 483 (Colo.App.2003) (applying the economic loss rule to bar a claim for damages to neighboring land outside the contemplation of the contract, where the damage was a consequence of the defendant's breach of contract).

### 3. Negligent Supervision

¶ 35 Plaintiff next argues that its claim for negligent supervision is not barred by the economic loss rule because defendant's common law duty to properly supervise its employees is separate from its contractual obligations to plaintiff. We disagree.

¶ 36 To prevail on a negligent supervision claim, "the plaintiff must prove that the employer has a duty to prevent an unreasonable risk of harm to third persons to whom the employer knows or should have known that the employee would cause harm." *Keller v. Koca*, 111 P.3d 445, 448 (Colo.2005) (citing *Moses v. Diocese of Colorado*, 863 P.2d 310, 329 (Colo.1993), and *Destefano v. Grabrian*, 763 P.2d 275, 286–88 (Colo.1988)).

¶ 37 Like its negligence claim, plaintiff's negligent supervision claim arises directly from its contract with defendant. The allegedly negligently supervised employee here was doing work contemplated by the contract. *See Makoto*, 250 P.3d at 628 (comparison of the plaintiff's contract and tort claims "makes clear that the latter is dependent on the former"). Therefore, we see no distinction between the duty of reasonable care defendant owed plaintiff under the contract and defendant's common law duty of reasonable care to prevent an unreasonable risk of harm to plaintiff from its employees' conduct. *See Keller*, 111 P.3d at 448 (describing elements of common law duty); *see also Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 589–90 (Ky.2004) (Keller, J., concurring) (observing that the plaintiff's claim for negligent supervision did not articulate a duty independent of the defendant's contractual duties and should have

been barred by the economic loss rule) (citing *Town of Alma*, 10 P.3d at 1263–64); *cf. Ferro Corp. v. Blaw Knox Food & Chem. Equip. Co.*, 121 Ohio App.3d 434, 700 N.E.2d 94, 98 (1997) (concluding that "no distinction in appellant's claim of negligence and negligent supervision" existed for purposes of the economic loss rule in product liability case).

#### 4. Application of the Economic Loss Rule to Service Contracts

¶ 38 Plaintiff asks us to abolish the economic loss rule as it pertains to contracts for services by adopting the reasoning of the Wisconsin Supreme Court in *Insurance Company of North America v. Cease Electric, Inc.*, 276 Wis.2d 361, 688 N.W.2d 462 (Wis.2004). We decline to do so.

¶ 39 Colorado appellate courts have never distinguished between contracts for the sale of goods and contracts for services in applying the economic loss rule. *See, e.g., BRW, Inc.*, 99 P.3d at 67–68 (applying economic loss rule to bar tort claims arising from contract for engineering services); *Hamon Contractors*, 229 P.3d at 289, 295 (applying economic loss rule to bar tort claims arising from duties implicated by performance of contract for installation of underground pipe); *U.S. Fire Ins. Co. v. Sonitrol Mgmt. Corp.*, 192 P.3d 543, 547 (Colo.App.2008) (applying economic loss rule to bar tort claims arising from contract for security services, including installation and monitoring of alarm system). We will not depart from binding Colorado Supreme Court precedent, or from persuasive decisions from other divisions of this court, to reformulate the economic loss rule to abolish its application to service contracts. Moreover, if we were to accept plaintiff's invitation to hold that the economic loss rule does not apply to service contracts, we would be ruling on a broad category of factual situations not presented by this case. *See A.O. Smith Harvestore Products, Inc. v. Kallsen*, 817 P.2d 1038, 1039 (Colo.1991) (declining to address an issue "the resolution of which is unnecessary to the disposition of this appeal"); *see also Bd. of County Comm'rs v. County Rd. Users Ass'n*, 11 P.3d 432, 439 (Colo.2000) (courts may not issue advisory opinions in cases that are not yet ripe).

#### 5. Willful and Wanton Conduct

¶ 40 Finally, we reject plaintiff's argument that the economic loss rule should not bar recovery in tort when a defendant commits willful and wanton conduct.

¶ 41 "Willful and wanton conduct is purposeful conduct committed recklessly that exhibits an intent consciously to disregard the safety of others. Such conduct extends beyond mere unreasonableness." *U.S. Fire Ins. Co.*, 192 P.3d at 549 (quoting *Forman v. Brown*, 944 P.2d 559, 564 (Colo. App.1996)). Whether a defendant's actions amounted to willful and wanton conduct is a question of fact. *Id.* (citing *Forman*, 944 P.2d at 564). Proof of willful and wanton conduct is sufficient to defeat a limitation-of-liability clause in both tort and contract actions. *See Core–Mark Midcontinent, Inc.*, 2012 COA 120, ¶¶ 15–19.

¶ 42 But merely proving willful and wanton conduct is not sufficient to avoid the economic loss rule. A division of this court applied the economic loss rule to bar a tort claim in a case where the plaintiff also filed a breach of contract claim, accompanied by an allegation of willful and wanton conduct. *See U.S. Fire Ins. Co.*, 192 P.3d at 547–48. And divisions of this court have repeatedly applied the economic loss rule to bar intentional tort claims when no independent duty of care existed. *See, e.g., Hamon Contractors, Inc.*, 229 P.3d at 295 (post-contractual fraud); *Parr v. Triple L & J Corp.*, 107 P.3d 1104, 1107–08 (Colo.App.2004) (intentional interference with prospective business advantage); *Carder, Inc. v. Cash*, 97 P.3d 174, 183–84 (Colo.App.2003) (conversion); *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1230–31 (Colo.App.2002) (civil conspiracy). We see no reason to depart from this precedent, which is consistent with the principle that the economic loss rule turns not on the nature of the defendant's conduct, but on the nature of the duties owed by the defendant. *See Town of Alma*, 10 P.3d at 1262–63.

¶ 43 We conclude that plaintiff's assertion of willful and wanton conduct cannot prevent application of the economic loss rule.

¶ 44 Judgment affirmed.

JUDGE ROMÁN and JUDGE VOGT * concur.