1
 2025 CO 17 Mid-Century Insurance Company, a California corporation, as subrogee of Masterpiece Kitchen, Petitioner v. HIVE Construction, Inc., a Colorado corporation. Respondent No. 23SC267
Supreme Court of Colorado, En Banc
April 21, 2025
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 21CA1393
 
 
          
 Attorneys for Petitioner:
 
 
           Cozen
 O'Connor
 
 
           Cheri
 MacArthur
 
 
          
 Denver, Colorado
 
 
          
 Spencer Fane LLP
 
 
           Dean
 Neuwirth
 
 
          
 Denver, Colorado
 
 
          
 Attorneys for Respondent:
 
 
          
 Ross-Shannon & Proctor, P.C.
 
 
          
 Bradley Ross-Shannon
 
 
          
 Gregory F. Szydlowski
 
 
           Joshua
 R. Proctor
 
 
          
 Lakewood, Colorado
 
 2
 
          
 JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD, JUSTICE
 HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER joined.
 
 
          
 OPINION
 
 
          
 GABRIEL JUSTICE
 
 3
 
          ¶1
 This case involves limits on the reach of the economic loss
 rule. Mid-Century Insurance Company contends that because it
 had alleged willful and wanton conduct by HIVE Construction,
 Inc., with which Mid-Century's subrogor, Masterpiece
 Kitchen, had contracted to construct a restaurant, the
 economic loss rule did not preclude it from asserting a
 negligence claim, notwithstanding the existence of the
 contract. Mid-Century thus asks us to reverse the ruling of
 the division below concluding that the economic loss rule
 barred its negligence claim.[1]
 
 
          ¶2
 We now conclude that no exception to the economic loss rule
 exists for allegations of willful and wanton conduct. We
 further conclude, based on longstanding economic loss rule
 principles, that the rule barred Mid-Century from asserting a
 negligence claim premised on a duty established by the
 contract in this case.
 
 
          ¶3
 Accordingly, we affirm the judgment of the division below.
 
 4
 
          I.
 Facts and Procedural History
 
 
          ¶4
 HIVE served as the general contractor for the construction of
 Masterpiece Kitchen, a restaurant. In the contract governing
 the restaurant's construction, HIVE warranted, among
 other things, that "the Work will conform to the
 requirements of the Contract Documents." The contract
 further specified, "Work not conforming to these
 requirements, including substitutions not properly approved
 and authorized, may be considered defective."
 
 
          ¶5
 As pertinent here, the architectural plans and design for the
 restaurant, which were part of the Contract Documents, called
 for the construction of a wall separating the kitchen and
 dining area. These documents specified that two layers of
 drywall, which would increase the wall's fire resistance,
 were to be installed on the kitchen side of the wall. When
 HIVE constructed the wall, however, it installed one layer of
 drywall and one layer of plywood on the kitchen side. HIVE
 did not submit a change order asking permission to deviate
 from the plans and design in this way.
 
 
          ¶6
 The substituted plywood was combustible. Installing the
 plywood on the kitchen side of the wall thus placed
 combustible material much closer to a heat source (the
 broiler in the kitchen) than the plans and design had
 prescribed. A fire eventually started within the wall,
 causing damage to the restaurant that forced the restaurant
 to close.
 
 5
 
          ¶7
 As Masterpiece Kitchen's property insurer, Mid-Century
 made payments to and on behalf of Masterpiece Kitchen for
 damages caused by the fire. Mid-Century, as Masterpiece
 Kitchen's subrogee, then sued HIVE and the project's
 architect, asserting single claims for negligence against
 each of them. (Mid-Century settled its claim against the
 architect, and that claim is not before us.)
 Mid-Century's negligence claim alleged that HIVE
 "had a duty to perform its work as general contractor .
 . . in a safe, careful, competent, and workmanlike
 manner" and that HIVE had breached this duty by
 deviating from the architectural plans and design by
 installing combustible plywood in the wall, which was
 adjacent to heat-producing appliances. Mid-Century further
 alleged that HIVE's installation of the combustible
 plywood in the wall demonstrated a careless and reckless
 disregard for the rights and safety of others, including
 Masterpiece Kitchen's owners, and therefore constituted
 willful and wanton conduct.
 
 
          ¶8
 Mid-Century did not initially assert a breach of contract
 claim against HIVE. One week before trial, however, it sought
 leave to amend its complaint to assert such a claim, in place
 of its negligence claim. In its proposed amended complaint,
 Mid-Century alleged that HIVE had breached its duty under the
 contract and project-related documents to perform its work as
 a general contractor safely and competently when it installed
 combustible plywood in the kitchen wall adjacent to
 heat-producing appliances.
 
 6
 
          ¶9
 Over HIVE's objection, the district court initially
 granted Mid-Century's motion. But HIVE then renewed its
 objection to the amended complaint, contending that it would
 suffer substantial prejudice from this "last-second
 change" in the nature of Mid-Century's claim. The
 court then reconsidered its prior decision, denied
 Mid-Century's motion for leave to file an amended
 complaint, and ordered Mid-Century to proceed to trial on its
 originally pleaded negligence theory.
 
 
          ¶10
 A jury trial commenced, and after Mid-Century presented its
 case, HIVE moved for a directed verdict, arguing that the
 economic loss rule barred Mid-Century's negligence claim.
 Relying on McWhinney Centerra Lifestyle Center LLC v.
 Poag & McEwen Lifestyle Centers-Centerra LLC, 2021
 COA 2, ¶ 67, 486 P.3d 439, 453, in which a division of
 the court of appeals had concluded, contrary to other
 divisions, that in most instances, the economic loss rule
 does not bar intentional tort claims, the district court
 concluded that the rule does not apply to allegations of
 willful and wanton conduct. Accordingly, the court denied
 HIVE's directed verdict motion.
 
 
          ¶11
 At the conclusion of the trial, the jury returned a special
 verdict, finding that HIVE's conduct was willful and
 wanton and caused Mid-Century's damages. The district
 court then entered judgment in Mid-Century's favor.
 
 7
 
          ¶12
 HIVE appealed, arguing, as pertinent here, that the district
 court had erred in denying its directed verdict motion on the
 ground that the economic loss rule does not apply to willful
 and wanton conduct. Mid-Century Ins. Co. v. HIVE Constr.,
 Inc., 2023 COA 25, ¶ 1, 531 P.3d 427, 429. A
 division of the court of appeals agreed with HIVE and
 reversed. Id. at ¶ 2, 531 P.3d at 429-30.
 
 
          ¶13
 The division first analyzed the relief that Mid-Century had
 sought, its allegations of negligence, and the terms of the
 contract between Masterpiece Kitchen and HIVE and concluded
 that the duty of care that HIVE had allegedly breached was
 not independent of its contractual obligations. Id.
 at ¶¶ 29-32, 531 P.3d at 433-34. The division
 observed that under such circumstances, the economic loss
 rule should bar Mid-Century's negligence claim.
 Id. at ¶ 33, 531 P.3d at 434. The division
 proceeded, however, to consider Mid-Century's assertion
 that the economic loss rule does not apply to negligence
 claims involving willful and wanton conduct. Id.
 
 
          ¶14
 In this regard, the division acknowledged that in Bermel
 v. BlueRadios, Inc., 2019 CO 31, ¶ 20 n.6, 440 P.3d
 1150, 1154 n.6, we suggested that the economic loss rule
 generally should not apply to shield intentional tortfeasors
 from liability for misconduct that happens also to breach a
 contractual obligation. Mid-Century, ¶ 35, 531
 P.3d at 434-35. The division reasoned, however, that this
 comment in Bermel was dicta and, in any event, did
 not address the kind of claim at issue in
 
 8
 
 this case, namely, one based on willful and wanton conduct.
 Id. at ¶ 36, 531 P.3d at 435. The division
 further noted that McWhinney, on which the district
 court had relied, similarly did not involve a claim based on
 willful and wanton conduct. Id. at ¶ 40, 531
 P.3d at 436.
 
 
          ¶15
 The division then considered several cases in which other
 divisions of the court of appeals had applied the economic
 loss rule to bar claims based on intentional or willful and
 wanton conduct, and the division perceived no reason to
 depart from this "consistent precedent."
 Id. at ¶¶ 41-42, 531 P.3d at 436. The
 division thus concluded that the district court had erred in
 declining to apply the economic loss rule to bar
 Mid-Century's negligence claim, notwithstanding the
 allegation of willful and wanton conduct. Id. at
 ¶ 43, 531 P.3d at 436.
 
 
          ¶16
 Lastly, the division rejected Mid-Century's contention
 that any error in the district court's denial of the
 motion for a directed verdict was harmless and should be
 remedied by retrial on a contract claim. Id. at
 ¶ 44 &n.9, 531 P.3d at 436-37, 437 n.9. The division
 perceived "clear harm" in allowing the jury to
 decide a claim that should have been barred by the economic
 loss rule and concluded that a valid contract claim did not
 exist because the district court had denied Mid-Century's
 motion for leave to amend its complaint and substitute a
 contract claim for the negligence claim. Id.
 
 9
 
          ¶17
 Accordingly, the division reversed the judgment and remanded
 this case to the district court with instructions to direct a
 verdict in HIVE's favor. Id. at ¶ 45, 531
 P.3d at 437.
 
 
          ¶18
 Mid-Century then petitioned this court for a writ of
 certiorari, and we granted its petition.
 
 
          II.
 Analysis
 
 
          ¶19
 We begin by setting forth the applicable standard of review.
 We then discuss the basic principles of the economic loss
 rule and conclude that willful and wanton conduct is not
 excepted from that rule. Finally, we apply these principles
 to the facts before us and conclude that the economic loss
 rule barred Mid-Century's negligence claim.
 
 
          A.
 Standard of Review
 
 
          ¶20
 C.R.C.P. 50 allows a party to move for a directed verdict at
 the close of an opponent's evidence or at the close of
 all of the evidence. A court may grant a directed verdict
 motion only when the evidence, viewed in the light most
 favorable to the non-moving party, "compels the
 conclusion that reasonable persons could not disagree and
 that no evidence, or legitimate inference therefrom, has been
 presented upon which a jury's verdict against the moving
 party could be sustained." Burgess v. Mid-Century
 Ins. Co., 841 P.2d 325, 328 (Colo.App. 1992).
 
 10
 
          ¶21
 We review a district court's ruling on a motion for a
 directed verdict de novo. People in Int. of L.S.,
 2023 CO 3M, ¶ 13, 524 P.3d 847, 851. Similarly, the
 application of the economic loss rule presents a question of
 law that we review de novo. Engeman Enters., LLC v. Tolin
 Mech. Sys. Co., 2013 COA 34, ¶ 11, 320 P.3d 364,
 367.
 
 
          B.
 The Economic Loss Rule
 
 
          ¶22
 Under the economic loss rule, "a party suffering only
 economic loss from the breach of an express or implied
 contractual duty may not assert a tort claim for such a
 breach absent an independent duty of care under tort
 law." Town of Alma v. AZCO Constr., Inc., 10
 P.3d 1256, 1264 (Colo. 2000). This rule serves several
 purposes, including maintaining a distinction between
 contract and tort law, holding parties to the terms of their
 bargain, and encouraging parties to allocate risks and costs
 during bargaining without fear of unanticipated future
 liability that would negate the parties' efforts to build
 cost considerations into their contract. Id. at
 1262. By promoting these purposes, the rule "serves to
 ensure predictability in commercial transactions."
 Id.
 
 
          ¶23
 The precise allocation of risk through contracting is of
 particular importance in the construction industry. BRW,
 Inc. v. Dufficy & Sons, Inc., 99 P.3d 66, 74 (Colo.
 2004) (citing and deeming persuasive Berschauer/Phillips
 Constr. Co. v. Seattle Sch. Dist. No. 1, 881 P.2d 986,
 992 (Wash. 1994)). This is because architects, contractors,
 
 11
 
 and other construction industry professionals determine the
 fees to be charged based on their expected liability exposure
 as bargained and provided for in their contracts.
 Berschauer/Phillips, 881 P.2d at 992.
 
 
          ¶24
 Whether the economic loss rule applies depends not on the
 nature of the damages-physical or economic-but rather on the
 source of the duty allegedly breached-the contract or some
 other source. Town of Alma, 10 P.3d at 1262. Thus, a
 breach of duty arising from a contract must be redressed
 under the parties' contract, and a tort action will not
 lie. Id. Conversely, a breach of duty arising
 independently of the parties' contractual duties may
 support a tort action. Id. at 1262-63.
 
 
          ¶25
 In determining the source of the duty at issue, courts
 consider whether (1) the relief sought in negligence is the
 same as the contractual relief; (2) there exists a recognized
 common law duty of care in negligence; and (3) the negligence
 duty and contractual duty differ in any way. BRW, 99
 P.3d at 74. If the parties have memorialized the applicable
 duty of care in their contract (i.e., if the duty is
 contained within or imposed under the contract), then no duty
 exists independent of the contract, and the economic loss
 rule will apply to bar a tort claim. City of Aspen v.
 Burlingame Ranch II Condo. Owners Ass'n, 2024 CO 46,
 ¶ 43, 551 P.3d 655, 664.
 
 12
 
          ¶26
 We have never excepted willful and wanton tort claims from
 the economic loss rule. In Bermel, ¶ 20 n.6,
 440 P.3d at 1154 n.6, however, we noted that the economic
 loss rule generally should not apply to intentional
 tort claims:
 
 
 [J]ust as we have held that "[u]nder no circumstances
 will an exculpatory agreement be permitted to shield against
 a claim of willful and wanton negligence," we note that
 the economic loss rule generally should not be available to
 shield intentional tortfeasors from liability for misconduct
 that happens also to breach a contractual obligation.
 
 
 Id. (second alteration in original) (quoting
 McShane v. Stirling Ranch Prop. Owners Ass'n,
 2017 CO 38, ¶ 20, 393 P.3d 978, 983).
 
 
          ¶27
 This statement regarding intentional tort claims does not
 convince us that willful and wanton tort claims lie outside
 the reach of the economic loss rule. An intentional tort
 claim is distinct from a willful and wanton tort claim.
 Intentional conduct requires that the actor intend the result
 of the conduct or know that the conduct is likely to bring
 about that result. See Pub. Serv. Co. of Colo. v. Van
 Wyk, 27 P.3d 377, 392 (Colo. 2001); Culpepper v.
 Pearl St. Bldg., Inc., 877 P.2d 877, 882 (Colo. 1994);
 CJI-Civ. 24:2 (2024). Willful and wanton conduct, in
 contrast, refers to acts or omissions committed purposely but
 without regard to the consequences of those acts or
 omissions. § 13-21-102(1)(b), C.R.S. (2024); CJI-Civ.
 9:30 (2024). Thus, as we said long ago, "[W]illful and
 wanton conduct is that which approaches but does not include
 an intentional tort nor can it be classified as such."
 Brown v. Spain, 466 P.2d 462, 465 (Colo. 1970).
 
 13
 
          ¶28
 Furthermore, our discussion in Bermel, ¶ 20
 n.6, 440 P.3d at 1154 n.6, of agreements purporting to
 exculpate a party from liability for willful and wanton
 negligence does not support removing willful and wanton
 negligence claims from the economic loss rule's reach.
 Application of the economic loss rule, unlike an exculpatory
 agreement, does not shield anyone from a claim asserting
 willful and wanton conduct. It merely dictates the nature of
 that claim-contract, rather than tort.
 
 
          ¶29
 In short, our statement in Bermel did not create an
 exception to the economic loss rule for tort claims asserting
 willful and wanton conduct, and we decline to adopt one now.
 Indeed, in our view, such an exception would undermine the
 purposes of the rule because it would allow a party to evade
 the rule's application simply by alleging willful or
 wanton conduct. Nor do we deem such an exception necessary to
 deter willful and wanton conduct or to compensate plaintiffs
 when such conduct occurs because a remedy already exists in
 contract.
 
 
          ¶30
 For these reasons, we conclude that willful and wanton
 conduct is not excepted from the economic loss rule, and we
 turn to the facts now before us.
 
 
          C.
 Application
 
 
          ¶31
 As described above, the three factors that we identified in
 BRW, 99 P.3d at 74, guide our determination of the
 source of the duty at issue and, in turn, whether the
 economic loss rule applies. These factors, again, are whether
 (1) the relief
 
 14
 
 sought in negligence is the same as the contractual relief;
 (2) there exists a recognized common law duty of care in
 negligence; and (3) the negligence duty and contractual duty
 differ in any way. Id. We address each of these
 factors in turn.
 
 
          ¶32
 First, the parties do not dispute that the relief that
 Mid-Century sought by way of its negligence claim (i.e.,
 damages to the restaurant caused by the fire) is the same
 relief that it could have sought by way of a contract claim.
 Indeed, when Mid-Century belatedly attempted to amend its
 complaint to assert a contract claim, it demanded exactly
 that relief.
 
 
          ¶33
 Second, Mid-Century alleged in its complaint a duty of care
 in negligence "to perform its work as general contractor
 . . . in a safe, careful, competent, and workmanlike
 manner" and that HIVE had breached this duty when it
 deviated from the plans and design and installed combustible
 plywood in the wall.
 
 
          ¶34
 Third, notwithstanding the possible existence of this duty of
 care in negligence, such a duty does not differ in any way
 from HIVE's duty under the contract, in which HIVE
 warranted that "the Work will conform to the
 requirements of the Contract Documents" and specified
 that "substitutions not properly approved and
 authorized" did not conform to the requirements. Indeed,
 when Mid-Century sought to amend its complaint to assert a
 breach of contract claim, it described HIVE's contractual
 duty as a duty to perform its work as a
 
 15
 
 general contractor safely and competently, and it alleged
 that HIVE breached this duty when it installed combustible
 plywood in the kitchen wall adjacent to heat-producing
 appliances. This duty and the alleged breach are identical to
 those allegedly arising under tort law.
 
 
          ¶35
 The parties thus memorialized in their contract the same duty
 that Mid-Century contended HIVE breached by deviating from
 the plans and design, and thus, the alleged tort duty was not
 independent of the duty set forth in the parties'
 contract. Accordingly, the economic loss rule required
 Mid-Century to pursue its claim in contract, rather than
 tort. City of Aspen, ¶ 43, 551 P.3d at 664;
 Town of Alma, 10 P.3d at 1264. The fact that
 Mid-Century alleged that HIVE had engaged in willful and
 wanton conduct does not alter this conclusion.
 
 
          ¶36
 We are not persuaded otherwise by Mid-Century's assertion
 that the economic loss rule does not apply because
 Mid-Century suffered property damage, rather than pure
 economic loss. Mid-Century raised this argument for the first
 time in its briefing in this court. Accordingly, the issue is
 not properly before us. See Est. of Stevenson v.
 Hollywood Bar & Cafe, Inc., 832 P.2d 718, 721 n.5
 (Colo. 1992) ("Arguments never presented to, considered
 or ruled upon by a trial court may not be raised for the
 first time on appeal.").
 
 
          ¶37
 Nor are we persuaded by Mid-Century's argument that the
 error in allowing its tort claim to proceed was harmless
 because it could have alleged the
 
 16
 
 same damages in contract. Ultimately, Mid-Century did not do
 so (even though it belatedly tried to do so). Although we
 "must disregard any error or defect in the proceeding
 which does not affect the substantial rights of the
 parties," C.R.C.P. 61, we do not believe that
 harmlessness may be measured against a claim that Mid-Century
 never asserted and that the jury never considered.
 
 
          III.
 Conclusion
 
 
          ¶38
 For these reasons, we conclude that the economic loss rule
 does not except allegations of willful and wanton conduct
 from its reach. Applying, then, the economic loss rule to the
 facts before us, we conclude that the rule barred
 Mid-Century's negligence claim here.
 
 
          ¶39
 Accordingly, we affirm the judgment of the division below.
 
 
 ---------
 
 
 Notes:
 
 
 [1] Specifically, we granted certiorari to
 review the following issue:
 
 
 Whether the division erred in concluding that
 Colorado's economic loss rule precludes Mid-Century
 Insurance Company's negligence claim alleging that HIVE
 Construction, Inc.'s willful and wanton conduct resulted
 in a fire and property damage.
 
 
 ---------