## MAKOTO USA, INC., a Colorado corporation, Plaintiff–Appellee,

v.

## Paul R. RUSSELL, Alysn Hassenforder, and Inner Quests, Inc., a Colorado corporation, Defendants–Appellants.

### No. 08CA1372.

Colorado Court of Appeals, Div. V.

Nov. 25, 2009.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2009.

Laff Campbell Tucker & Gordon, LLP, Darrel L. Campbell, Greenwood Village, Colorado, for Plaintiff–Appellee.

Moye White, LLP, Paul R. Wood, Elizabeth H. Getches, Denver, Colorado, for Defendants–Appellants.

Opinion by Judge CONNELLY.

A jury found for plaintiff, Makoto USA, Inc., on three claims against defendants, Paul R. Russell, Alysn Hassenforder, and Inner Quests, Inc. The third claim, a theft claim under Colorado's stolen property statute, § 18–4–405, C.R.S.2009, resulted in a trebled judgment and an award of attorney fees. Defendants' appeal challenges the judgment on this third claim only. We hold this theft claim was precluded by the economic loss rule, and so we reverse the judgment and fee award on that claim.

## I. Background

This case arises out of an asset purchase agreement in which plaintiff agreed to pay $500,000 over time—$250,000 at closing and five annual payments of $50,000 thereafter—to acquire the Makoto product line, which

included a design patent, a utility patent, a trademark, and other things.

Plaintiff made the initial $250,000 payment in 2002, followed by $50,000 payments in 2003 and 2004. It later learned that the utility patent had become unenforceable in 2001 because defendants had failed to make required maintenance payments. In July 2004, the United States Patent and Trademark Office issued a written decision declining to reinstate the patent.

Having paid a total of $350,000, plaintiff made no further payments. Instead, it filed suit against defendants.

The parties went to trial on three claims: the first for breach of contract, the second for fraud, and the third for civil theft under the stolen property statute. Defendants timely moved for a directed verdict on the third claim, arguing that it was precluded as a matter of law and was duplicative of plaintiff's contract claim. The trial court denied defendants' directed verdict motion, and all three claims were submitted to the jury.

The jury found for plaintiff on each claim. It awarded plaintiff: (1) $1 nominal damages for breach of contract; (2) $25,000 on the fraud claim; and (3) $50,000 on the theft claim.

The trial court entered judgment for plaintiff on all three claims, but defendants' appeal challenges only the theft claim. On that claim, the trial court trebled the damages and entered a $150,000 judgment in favor of plaintiff. It also awarded plaintiff statutory attorney fees of more than $117,000 because it had prevailed on the theft claim. The trial court subsequently denied defendants' post-judgment motion to alter or amend the judgment on the theft claim.

## II. Standard of Review

█ Whether the economic loss rule precludes a particular claim raises a legal issue subject to de novo appellate review. *See Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, —— (Colo.App. 2009). Likewise, we review de novo the grant or denial of a directed verdict. *Tricon Kent Co. v. Lafarge North America, Inc.*, 186 P.3d 155, 159 (Colo.App.2008); *cf. Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269–71 (Colo.2000) (independently conducting legal analysis in concluding that economic loss rule should have barred tort claim from being submitted to jury); *Andrews v. Picard*, 199 P.3d 6, 10 (Colo.App.2007) (reviewing de novo the grant of directed verdict based on economic loss rule but viewing facts in the light most favorable to the nonmoving party).

Although the jury did not issue special findings, both sides have predicated their arguments on the premise that the jury relied on the last payment of $50,000 in 2004. Plaintiff confirmed at oral argument that it was relying on this last payment. Accordingly, in resolving this appeal, we accept the parties' premise that the theft award was based on the final $50,000 contractual payment.

## III. Discussion

█ The economic loss rule "maintain[s] the boundary between contract law and tort law." *Town of Alma v. AZCO Construction, Inc.*, 10 P.3d 1256, 1259 (Colo.2000). It provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Id.* at 1264.

Here, as in most economic loss rule cases, the dispute involves whether the tort duty was "independent" of a contractual duty. In trying to show independence, plaintiff posits that even non-contracting parties have a duty not to commit fraud and theft. This premise leads plaintiff to conclude that the economic loss rule never precludes fraud or theft claims.

█ Contrary to plaintiff's premise, independence is not shown simply because a duty also exists outside the contract. Instead, "two conditions must be met": "[f]irst, the duty must arise from a source other than the relevant contract"; and "[s]econd, the duty must not be a duty also imposed by the contract." *Haynes Trane Service Agency, Inc. v. American Standard, Inc.*, 573 F.3d 947, 962 (10th Cir.2009) (citing Colorado cases). As to the second condition, our supreme court has explained that if a duty is

also "memorialized in the contracts, it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim." *BRW, Inc. v. Dufficy & Sons, Inc.,* 99 P.3d 66, 74 (Colo.2004). It has listed three factors that can "aid" the inquiry. *Id.* (whether claims seek the same relief, whether there is a recognized common law duty in tort, and whether the tort duty differs from the contractual duty).

Because plaintiff's premise is incomplete, its conclusion—that fraud and theft claims are never precluded by the economic loss rule—is overbroad. Indeed, another division of this court recently rejected a similar contention that "a claim for fraud in the performance of a contract necessarily is based on a duty independent of the contract." *Hamon,* 229 P.3d at 291, 2009 WL 1152160, at *6. *Hamon* held that fraud claims could not proceed where they arose from duties implicated by the parties' contracts. *Id.* at **6–11, 229 P.3d at 290–95. Accordingly, the division concluded that the economic loss rule barred the plaintiff's "post-contractual claims for fraudulent concealment and fraudulent misrepresentation." *Id.* at *11, 229 P.3d at 295.

■ Comparison of plaintiff's contract and theft claims in this case makes clear that the latter is dependent on the former. Plaintiff sought the same relief in its contract claim as it did in its theft claim. At trial, plaintiff urged the jury to order the entire $350,000 returned, because the contract was breached by defendants' failure to deliver the utility patent and because that same failure resulted in that $350,000 being stolen. Indeed, even in its appellate brief, plaintiff continues to maintain that its claims arise from defendants' "failure to transfer title to all of the intellectual property as represented in the parties' Asset Purchase Agreement."

The theft claim could not have been proven without first proving that defendants also breached their contract with plaintiff. Defendants were entitled, on the face of the contract, to all the monies paid by plaintiff, including the last payment of $50,000 that plaintiff contends was stolen by defendants. In return for these payments, defendants had reciprocal contractual duties to deliver the utility patent and other property to plaintiff. Had defendants complied with their reciprocal contractual duties, plaintiff would have no colorable claim that defendants "stole" a contractual payment.

The linkage between the contract and theft claims is confirmed by the contractual warranty provision. In that provision, defendants warranted that they had complete ownership of and the unencumbered right to transfer the intellectual property. Another contractual provision gave plaintiff the right to recover its earnest money payment for breach of this warranty. Plaintiff's theft claim was based in part on the theory that defendants accepted contractual payments knowing they could not honor this warranty.

Plaintiff has not identified any legal duty underlying the theft claim that was not also memorialized in the parties' contract. The division in *Hamon* recently suggested that pre-contractual claims of fraudulent inducement might be considered independent of the contract—and hence not be barred by the economic loss rule. *See* 229 P.3d at 291, 2009 WL 1152160, at *6 (citing cases). But, as this case comes before us, the parties agree that the jury's $50,000 theft award was predicated on the final post-contractual installment payment made in 2004—long after the contract was entered. Plaintiff's appellate briefs do not seek to justify the theft verdict based on a fraudulent inducement theory.

Plaintiff relies on *Rhino Fund, LLLP v. Hutchins,* 215 P.3d 1186 (Colo.App.2008), the only reported case to consider Colorado's economic loss rule and a civil theft claim. *Rhino Fund* held a civil theft claim was not barred by the economic loss rule, where: (1) the investment manager stole escrowed monies that he had no right to take for his personal benefit; and (2) the investor "ha[d] no contractual remedy" because the manager was not a party to the investment contract. *Id.* at 1194–95; *see also Burke v. Napieracz,* 674 So.2d 756, 758 (Fla.Dist.Ct.App.1996) (economic loss rule did not bar civil theft claim where defendant "convert[ed] the funds to his own use by allegedly stealing the monies [with] which he was entrusted").

Here, unlike in *Rhino Fund* and *Burke*, plaintiff's contract and theft claims were inextricably intertwined: the latter could not be proven without first proving the former. This underscores the need for an economic loss rule precluding contract cases from being "recast as tort cases in order to escape the limitations that the law has placed on suits for breach of contract." Richard A. Posner, *Common–Law Economic Torts: An Economic and Legal Analysis*, 48 Ariz. L.R. 735, 745 (2006).

Plaintiff finally argues that the economic loss rule, as a judicial construct, cannot be applied to preclude a statutory claim. We agree with plaintiff to this extent: if the legislature intended to provide a remedy in addition to a contractual one, the statutory remedy would trump the economic loss rule. *Cf. Boehme v. U.S. Postal Service*, 343 F.3d 1260, 1265–66 (10th Cir.2003) (statutory remedy provided by Colorado's Forcible Entry and Detainer statute not precluded by economic loss rule); *but see* Ballinger, Jr. & Thumma, *The Continuing Evolution of Arizona's Economic Loss Rule*, 39 Ariz. St. L.J. 535, 538 & n. 17 (2007) ("Some jurisdictions hold that the economic loss rule bars statutory claims, while other jurisdictions find that it does not.") (citing cases). We disagree with plaintiff, however, that the legislature intended the stolen property statute to provide any extra-contractual remedies.

There is no indication that the stolen property statute was intended to expand contractual remedies. To the contrary, that statute, which dates to 1861, has been construed narrowly in contract cases precisely to avoid expanding contractual remedies. *See, e.g., West v. Roberts*, 143 P.3d 1037, 1045 (Colo. 2006); *Keybank v. Mascarenas*, 17 P.3d 209, 214 (Colo.App.2000).

*West* held that a Uniform Commercial Code (UCC) provision had "abrogate[d] the stolen property statute so that 'theft' in that provision does not include any theft in which an owner voluntarily relinquishes property to a thief under a transaction of purchase." 143 P.3d at 1045 (analyzing UCC § 2–403 and citing *Keybank* with general approval). *Keybank*, in turn, held that the stolen property statute did "not encompass a larceny by trick or fraud, even if punishable under the criminal law, in which a person voluntarily delivers possession of his or her property under an agreement, giving the perpetrator authority to sell it under the UCC." 17 P.3d at 214; *see id.* ("dealer did not steal ... property within the meaning of § 18–4–405, even though he acted dishonestly").

We conclude that applying the economic loss rule on the facts of this case to preclude a civil theft claim does not improperly deny plaintiff a statutory remedy. Plaintiff was not entitled to pursue a civil theft claim in this action for breach of contract.

## IV. Conclusion

The judgment on the theft claim and the related attorney fee award are reversed.

Judge GRAHAM and Judge GABRIEL concur.