2013 COA 164

**John Van REES, Sr. d/b/a Exquisite Crystals.com, Plaintiff–Appellant,**

v.

**UNLEADED SOFTWARE, INC., a/k/a The Unleaded Group, Defendant–Appellee.**

**Court of Appeals No. 12CA1014**

Colorado Court of Appeals, Div. VII.

Announced December 5, 2013

City and County of Denver District Court No. 10CV9515, Honorable Ann B. Frick, Judge

The Westerfield Law Firm, LLC, Zachary S. Westerfield, Denver, Colorado, for Plaintiff–Appellant.

Law Offices of Peggy Stevens, P.C., Peggy E. Stevens, Lakewood, Colorado, for Defendant–Appellee.

Opinion by JUDGE FOX

¶ 1 Plaintiff, John Van Rees, Sr., contends that the trial court erred in dismissing his claims against defendant, Unleaded Software, Inc. As an apparent issue of first impression, we interpret the scope and applicability of Colorado's economic loss rule in the context of three agreements for the design and maintenance of a website. We hold that under the economic loss rule, no independent duty exists for tort claims of fraud, fraudulent concealment, constructive fraud, or negligent misrepresentation when the alleged misrepresentations and false statements are about the ability to perform contractual duties. We also affirm the trial court's dismissal of Van Rees's claims of negligence, violation of the Colorado Consumer Protection Act, and civil theft.

## I. Background

¶ 2 The following facts are taken from Van Rees's complaint, which we must accept as true in reviewing the trial court's dismissal. *See Denver Post Corp. v. Ritter,* 255 P.3d 1083, 1088 (Colo.2011).

¶ 3 Between December 2009 and March 2010, Van Rees and Unleaded executed three contracts wherein Unleaded agreed to (1) design and build a website for Van Rees's online business, Exquisite Crystals; (2) perform "search engine optimization" (SEO) services for the website; and (3) host the website on a dedicated server.

¶ 4 On April 1, 2010, the new Exquisite Crystals website went live,[1] but many aspects of the site were broken, not working, or missing. In addition, Unleaded hosted the website on a shared—rather than dedicated—server, allegedly resulting in slower performance. Unleaded conducted no SEO work. The website was finished over three months after the contracted for date of "on or about" January 22, 2010.

¶ 5 Van Rees's complaint asserts ten causes of action resulting in economic losses from:

- Fraud, constructive fraud, fraudulent concealment, and negligent misrepresentation for making false or deceptive representations (or concealing material facts) relating to Unleaded's ability to create a website, conduct SEO work, and provide dedicated web hosting (four claims);[2]
- Negligent manufacture, development, and deployment of the website (one claim);
- Violation of the Colorado Consumer Protection Act (CCPA), §§ 6-1-101 to -112, C.R.S.2013 (one claim);
- Civil Theft, § 18-4-405, C.R.S.2013, for depriving Van Rees of "thing[s] of value" (one claim); and
- Breach of contract (three claims).

¶ 6 Unleaded moved to dismiss, pursuant to C.R.C.P. 12(b)(5), the seven tort claims (all the claims except the three breach of contract claims) as barred by the "economic loss rule." *See Town of Alma v. AZCO Constr., Inc.,* 10 P.3d 1256, 1264 (Colo.2000) ("[A] party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a

---

1. "Went live" means the website was available to the public for the first time. *See Parker v. Learn The Skills Corp.,* 2006 WL 2228867 at *4 (E.D.Pa. No. CIV.A.05–2752, Aug. 2, 2006) *aff'd,* 219 Fed. Appx. 187 (3d Cir.2007).

2. In each of these four claims, the complaint alleges that Unleaded made false representations of material facts related to: (1) its ability to design the Exquisite Crystals website, deliver the website in a timely manner, and transfer all necessary components of an older website to the new one; and (2) the nature and extent of its web hosting and SEO capabilities.

breach absent an independent duty of care under tort law."). Unleaded argued that it did not owe Van Rees an independent duty of care outside of the three contracts.

¶ 7 The trial court granted Unleaded's motion to dismiss without additional written analysis.

¶ 8 After a five-day trial, a jury found in favor of Van Rees on his three remaining breach of contract claims.

¶ 9 Van Rees appeals the dismissal of his seven tort claims.

## II. C.R.C.P. 12(b)(5)

¶ 10 We review de novo a ruling granting a C.R.C.P. 12(b)(5) motion to dismiss for failure to state a claim, accepting all factual allegations in the complaint as true and viewing them in the light most favorable to the plaintiff. *Denver Post Corp.*, 255 P.3d at 1088; *Gandy v. Colo. Dep't of Corr.*, 2012 COA 100, ¶ 20, 284 P.3d 898.

¶ 11 We will uphold an order granting a C.R.C.P. 12(b)(5) motion to dismiss only if the plaintiff's factual allegations do not, as a matter of law, support a claim for relief. *Denver Post Corp.*, 255 P.3d at 1088; *Gandy*, ¶ 21. A "complaint may be dismissed if the substantive law does not support the claims asserted." *W. Innovations, Inc. v. Sonitrol Corp.*, 187 P.3d 1155, 1158 (Colo.App.2008).

## III. Sufficiency of the Dismissal Order

¶ 12 Van Rees first contends that the trial court erred in dismissing his claims without sufficient written analysis. We disagree. A trial court need not make findings of fact and conclusions of law when it dismisses a complaint for failure to state a claim under C.R.C.P. 12(b)(5). *Henderson v. Romer*, 910 P.2d 48, 54 (Colo.App.1995), *aff'd sub nom. Henderson v. Gunther*, 931 P.2d 1150 (Colo.1997).

## IV. Economic Loss Rule

¶ 13 The economic loss rule provides that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent

duty of care under tort law. *AZCO Constr., Inc.*, 10 P.3d at 1264.

¶ 14 The applicability of the economic loss rule to a particular tort claim depends on the source of the duty owed by the defendant. *Id.* at 1262. And, to determine if the alleged duty is independently recognized, we consider (1) whether the relief sought in tort is the same as the contractual relief; (2) whether there is a recognized common law duty of care in tort; and (3) whether the tort duty differs in any way from the contractual duty. *See BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo.2004) (negligence claim); *Hamon Contractors, Inc. v. Carter & Burgess, Inc.*, 229 P.3d 282, 293 (Colo.App. 2009) (fraud claims); *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 627–28 (Colo.App.2009) (civil theft claim); *see also Stan Clauson Assocs., Inc. v. Coleman Bros. Constr., LLC*, 2013 COA 7, ¶ 8, 297 P.3d 1042 (negligence claim); *A Good Time Rental, LLC v. First Am. Title Agency, Inc.*, 259 P.3d 534, 538 (Colo.App.2011) (negligence and negligent misrepresentation claims).

¶ 15 The existence of a tort duty is a question of law that we review de novo. *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 866 (Colo.2005); *Engeman Enters., LLC v. Tolin Mech. Sys. Co.*, 2013 COA 34, ¶ 18, 320 P.3d 364, 369, 2013 WL 979508. We, likewise, review the applicability of the economic loss rule de novo. *Makoto USA, Inc.*, 250 P.3d at 627.

## V. Fraud and Negligent Misrepresentation

¶ 16 Van Rees first contends that the trial court erred in dismissing his claims of fraud, fraudulent concealment, constructive fraud, and negligent misrepresentation because he alleged duties independent of the three contracts. We disagree.

¶ 17 In each of these claims, the complaint alleges that Unleaded made false representations or concealed material facts related to (1) its ability to design and deliver a functional website in a timely fashion and (2) the nature of its web hosting and SEO capabilities. According to Van Rees, these claims implicate duties independent of the three contracts because they concern precontract

representations about Unleaded's ability to perform its contractual duties. In support, Van Rees relies on *Brody v. Bock*, 897 P.2d 769, 776 (Colo.1995), and *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 72 (Colo.1991).

¶ 18 *Brody* is factually distinguishable. Bock alleged that Brody promised to (1) amend his will to leave all of his stock in his two companies to Bock and (2) guarantee Bock a lifetime directorship on the board of either company. *Brody*, 897 P.2d at 772. Bock claimed he acted in justifiable reliance on Brody's promises by remaining an employee of Brody's companies. *Id.*

¶ 19 The supreme court held that Bock's fraud claim was for an alleged false representation intended to induce action:

> The gist of the fraud action is Bock's change of position in justifiable reliance on Brody's knowing false statement. The content of the allegedly fraudulent statement is *material not for the purpose of requiring Brody to perform the promise but for the purpose of establishing that Bock acted reasonably but detrimentally in justifiable reliance upon the false statement.*

*Id.* at 776 (emphasis added).

¶ 20 Here, however, Van Rees's claims of fraud, fraudulent concealment, constructive fraud, and negligent misrepresentation *are* based on Unleaded's promise to perform, which was subsequently memorialized in the three contracts. Thus, Unleaded's promises are not independent of its contractual duties. Rather, the duties here implicate performance of contract terms not matters extrinsic to the contract. *See Hamon Contractors, Inc.*, 299 P.3d at 289 (concluding that the duty Hamon alleged—to provide truthful information about the cause of the challenged drainage problem—arose out of the parties' interrelated contracts).

¶ 21 *Keller* is also factually distinguishable. The Kellers claimed that the defendant manufacturer made false representations about the quality of its farm products to induce the Kellers to purchase the products. *Keller*, 819 P.2d at 71. The defendant manufacturer moved to dismiss the claim because an integrated sales agreement stated that the buyer was not relying on any promises or guarantees made by the seller or manufacturer. *Id.*

¶ 22 The supreme court did not evaluate whether the negligent misrepresentation claim was independent of a contract claim because the alleged misrepresentations related to claims intended to induce action—to purchase the farm equipment—not, as here, to a promise to perform duties in three service contracts. *Id.* at 71; *see also Brody*, 897 P.2d at 776 (distinguishing between a promise to perform and a promise intending to induce reasonable reliance and action on the part of the promisee).[3]

¶ 23 Accepting Van Rees's position would frustrate the purpose of the economic loss rule. *See AZCO Constr., Inc.*, 10 P.3d at 1262 ("[T]he economic loss rule ... serves to maintain a distinction between contract and tort law."). While tort obligations generally arise from duties imposed by law in order to protect people and property from the risk of harm, contractual obligations arise from promises between parties. *Id.* Contract law allows parties to enforce the expectancy interests created by mutual promises to perform and to allocate the risks and costs of nonperformance. *Id.* "Limiting tort liability when a contract exists between parties is appropriate because a [party's] potential nonperformance can be adequately addressed by rational economic actors bargaining at arms length to shape the terms of the contract." *Id.*

¶ 24 Here, Van Rees, the owner of an established on-line business, contracted with Unleaded, a web developer. The contracts for the development and deployment of the Exquisite Crystals website, SEO services, and web hosting were agreements between sophisticated business entities. By bargaining for contract prices and duties, the parties had the ability to account for the risk of

---

3. The supreme court first determined that a negligent misrepresentation claim could lie in tort. *Keller*, 819 P.2d at 72 ("[A] contracting party's negligent misrepresentation of material facts prior to the execution of an agreement may provide the basis for an independent tort claim asserted by a party detrimentally relying on such negligent misrepresentations.").

nonperformance. *See A Good Time Rental,* 259 P.3d at 541 ("[E]ven a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract ... because, courts assume, sophisticated parties can build the anticipated cost of a breach of their respective duties into their bargain.") (citations omitted).

¶ 25 *A Good Time Rental* is more instructive than *Brody* or *Keller* here. In *A Good Time Rental,* the plaintiffs alleged that the defendant had misrepresented that it had completed certain actions required by a real estate closing agreement. 259 P.3d at 537. A division of this court determined that the economic loss rule barred the plaintiffs' negligent misrepresentation claim because it pertained to statements "directly related to performance of a contract." *Id.* at 541.

¶ 26 While *A Good Time Rental* pertains to statements made after the contract was signed, it is instructive because all alleged misrepresentations related directly to contractual duties. There, as here, the plaintiffs failed to allege any independent duty on which to base their tort claims. *See id.* Accordingly, we conclude that the trial court did not err in dismissing Van Rees's claims of fraud, fraudulent concealment, constructive fraud, and negligent misrepresentation.

## VI. Negligence

¶ 27 Van Rees next contends that the trial court erred when it dismissed his negligence claim. We conclude that Van Rees has not alleged that Unleaded owed him a duty of care independent of its contractual duties because: (1) Van Rees's complaint does not allege any negligent actions distinct from nonperformance of contractual duties, and he does not seek tort relief distinct from relief for a breach of contract; (2) public policy does not favor the existence of an independent duty for website designers; and (3) Colorado does not regulate or license website providers.

### A. The Alleged Negligent Acts Were Also Contractual Duties

¶ 28 To sustain a negligence claim, a plaintiff must demonstrate a duty of care independent of any contractual duties. *See*

*AZCO Constr., Inc.,* 10 P.3d at 1264; *BRW, Inc.,* 99 P.3d at 74.

¶ 29 Unleaded contracted to design, develop, and deploy a new website for Van Rees. The complaint alleges that Unleaded "negligently manufactured, developed, and deployed [Van Rees's] new website." According to Van Rees, Unleaded owed him an independent duty of care because the contract to build a new website did not provide a specific duty of care and the contractual terms were very vague. However, the duties Unleaded owed under the contract are the same duties that Van Rees alleges Unleaded negligently breached.

¶ 30 Van Rees's complaint also alleges that Unleaded's negligence was a direct and proximate cause of Van Rees's damages, including loss of sales, loss of natural rankings with search engines, and increased costs associated with SEO work and website development. Van Rees alleges the same damages in his breach of contract claims.

¶ 31 In sum, Van Rees's negligence claim fails to allege any duty independent of the three contracts, and he does not seek tort relief distinct from relief for a breach of contract. *See BRW, Inc.,* 99 P.3d at 74 (holding that if a duty of care is memorialized in a contract, there is no independent contractual duty, and the economic loss rule bars the tort claim); *A Good Time Rental, LLC,* 259 P.3d at 538 ("[E]ven a duty separately recognized under tort law is not independent if it is also imposed under the parties' contract.").

### B No Risk of Physical Harm

¶ 32 Tort law is designed to protect all citizens from the risk of physical harm to their persons or to their property. *See Logixx Automation, Inc. v. Lawrence Michels Family Trust,* 56 P.3d 1224, 1230 (Colo.App. 2002) (citing *AZCO Constr., Inc.,* 10 P.3d at 1262). Thus, in limited circumstances where the risk of physical harm is great, public policy favors the existence of an independent duty of care, despite contractual promises. *See, e.g., Cosmopolitan Homes, Inc. v. Weller,* 663 P.2d 1041 (Colo.1983); *Estate of Gattis v. McNutt,* 2013 COA 145, ¶ 17, 318 P.3d

549, 555, 2013 WL 5947134; *Andrews v. Picard*, 199 P.3d 6 (Colo.App.2007); *A.C. Excavating*, 114 P.3d 862; *Hoang v. Arbess*, 80 P.3d 863 (Colo.App.2003). Residential construction cases, for example, hold that the risk of physical harm, the foreseeability and likelihood of injury relative to the utility of home construction, and the burden of guarding against injury favor holding builders, contractors, and subcontractors accountable for tort as well as contract liability. *See A.C. Excavating*, 114 P.3d at 868.

¶ 33 In contrast, website development and related services do not involve a risk of physical harm, and no physical harm is alleged here. *See Digiknow, Inc. v. PKXL Cards, Inc.*, 2011-Ohio- 3592, ¶ 7, 2011 WL 2899600 (holding that Ohio's economic loss doctrine barred recovery for a tort claim alleging economic loss due to professional negligence in the design of a website).

### C.   No Professional Standard of Care

■ ¶ 34 Some professionals are held to standards of care independent of those established by contracts for their services. *Stan Clauson Assocs., Inc.*, ¶ 10. In those instances, "[i]f a contract for professional services does not explicitly adopt the professional standard of care, and Colorado law identifies the service provider as a professional, fulfillment of the professional standard of care is a duty that is independent of the services agreement, and the economic loss rule will not bar a claim for breach of the professional duty." *Id.*; *see BRW, Inc.*, 99 P.3d at 74 (economic loss rule barred tort claim against a professional where contract explicitly adopted the "usual and customary professional standards [of care]").

¶ 35 Service providers with duties independent of their contracts are regulated by the state through licensing and certification. *See* §§ 12–1.5–101 to –71–104, C.R.S.2013 (listing more than forty-five such service providers, including accountants, attorneys, electricians, engineers, surveyors, architects, various health care professionals, real estate brokers, and veterinarians); *Stan Clauson Assocs., Inc.*, ¶ 11. Van Rees does not identify, and we have not found, a Colorado statute or case

that holds a website developer to a professional standard of care.

¶ 36 For all the foregoing reasons, we conclude that the trial court did not err in dismissing Van Rees's negligence claim.

### VII.   Colorado Consumer Protection Act

■ ¶ 37 Van Rees next contends that the trial court erred in dismissing his claim under the CCPA. We disagree.

■ ¶ 38 In advancing a private cause of action under the CCPA, a plaintiff must allege:

(1) that the defendant engaged in an unfair or deceptive trade practice;

(2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation;

(3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property;

(4) that the plaintiff suffered injury in fact to a legally protected interest; and

(5) that the challenged practice caused the plaintiff's injury.

*Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo.2003).

■ ¶ 39 To establish a deceptive trade practice under section 6–1–105(1)(e), a plaintiff must show that the defendant's conduct "significantly impacts the public as actual or potential consumers of [its] goods, services, or property." *Id.* at 149. Thus, a CCPA claim is not actionable if it pertains to private conduct that does not affect the public. *Id.*

■ ¶ 40 To determine whether a challenged practice significantly impacts the public within the context of a CCPA claim, we consider: "(1) the number of consumers directly affected by the challenged practice, (2) the relative sophistication and bargaining power of the consumers affected by the challenged practice, and (3) evidence that the challenged practice has previously impacted other consumers or has the significant potential to do so in the future." *Id.*

¶ 41 In *Rhino Linings*, the plaintiff, a dealer in Rhino spray truck-bed linings, claimed

that the defendant failed to keep its contractual promise of exclusivity when it authorized an additional dealership in the plaintiff's county. *Id.* at 149. The supreme court held that an action affecting three dealers out of 550 worldwide did not significantly affect the public, especially when the plaintiff had a remedy for breach of contract. *Id.* at 150. The supreme court also recognized that the contracting parties were sophisticated business entities, that there was nothing in their contracts that affected the general public, and the plaintiffs failed to present evidence of deceptive or disingenuous advertisements related to the nature of exclusivity of dealership territories. *Id.*

¶ 42 Van Rees's complaint conclusorily alleges that Unleaded's "deceptive trade practice significantly impacts the public as actual or potential consumers of [Unleaded's] goods, services, or property." However, Van Rees points to no facts that, taken in the light most favorable to him, would support that vague and conclusory assertion. *Vickery v. Evelyn V. Trumble Living Trust,* 277 P.3d 864, 869 (Colo.App.2011) ("[W]e are not required to accept as true legal conclusions couched as factual allegations, and a complaint properly may be dismissed if the substantive law does not support the claims asserted.")

¶ 43 This dispute pertains to a private contract between two sophisticated business entities. Van Rees does not allege any harm or potential harm to identifiable segments of the public; the only harm Van Rees alleges is his own economic loss.

¶ 44 We conclude that Van Rees failed to allege sufficient facts to support a CCPA claim. *See id.* at 50.

### VIII. Civil Theft

¶ 45 Finally, Van Rees contends that the trial court erred in dismissing his civil theft claim under section 18-4-405. We disagree.

¶ 46 To state a claim for civil theft, a plaintiff must allege that (1) the defendant knowingly obtained control over anything of value belonging to the plaintiff without authorization and (2) the defendant did so with the specific intent to permanently deprive him of the benefit of the property. *Huffman v. Westmoreland Coal Co.,* 205 P.3d 501, 509 (Colo.App.2009); *see* § 18-4-401(1), C.R.S. 2013.

¶ 47 Although the complaint does not define "things of value," it is clear from the allegations that the civil theft claim arises out of the alleged breaches of contract. Thus, the civil theft claim fails because nothing in the complaint could be construed to establish an independent legal duty. *See Makoto USA, Inc.,* 250 P.3d at 628 (holding that civil theft claim was not separate from breach of contract claim because: (1) the plaintiffs could not have proven civil theft without first proving breach of contract; (2) the contractual warranty provision provided a linkage between the contract and theft claims; and (3) the plaintiffs did not identify a legal duty underlying the theft claim that was not also memorialized in the contract).

¶ 48 We therefore conclude that the trial court did not err in dismissing Van Rees's civil theft claim.

¶ 49 The judgment is affirmed.

JUDGE HAWTHORNE and JUDGE BOORAS concur.