COLORADO COURT OF APPEALS                                    **2017COA20**

Court of Appeals No. 16CA0102
Arapahoe County District Court No. 14CV32139
Honorable Charles M. Pratt, Judge

Chris Bermel,

Plaintiff-Appellant,

v.

BlueRadios, Inc.,

Defendant-Appellee.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE BOORAS
Terry, J., concurs
Berger, J., specially concurs

Announced February 23, 2017

Kishinevsky & Raykin, LLC, Igor Raykin, Ian Griffin, Aurora, Colorado, for
Plaintiff-Appellant

Brosseau Bartlett Seserman, LLC, David B. Seserman, Chad Lieberman,
Greenwood Village, Colorado, for Defendant-Appellee

¶ 1    In *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, the supreme court granted certiorari review on the question whether the economic loss rule may bar a claim for civil theft under section 18-4-405, C.R.S. 2016 (the civil theft statute).  Ultimately, the court did not answer that question because it was able to affirm on the narrower ground that the plaintiff had failed to prove one of the required elements of theft.  *Van Rees*, ¶¶ 23-24.

¶ 2    This appeal raises the question left unanswered in *Van Rees*. Plaintiff, Chris Bermel, contends that the trial court erred when it denied his motion for summary judgment, in which he argued that the economic loss rule barred the claim of defendant, BlueRadios, Inc., for civil theft.  Because the economic loss rule is a judicial construct, and because a civil theft claim is a statutory cause of action, we reject Bermel's argument and hold that the economic loss rule does not preclude a cause of action under the civil theft statute.

¶ 3    However, as to Bermel's Colorado Wage Protection Act (CWPA) claim, we conclude that summary judgment was improper, and we remand for further proceedings as to that claim.

## I. Background

¶ 4    In 2009, Bermel entered into a "Contractor Agreement" with BlueRadios.  Under the agreement, Bermel provided engineering services to BlueRadios.  Contemporaneously with his execution of that agreement, Bermel also signed a "Proprietary Information and Inventions Agreement" (PIAA).  The PIAA contained the following provision related to Bermel's removal, delivery, and return of "Company Materials":

> All Company Materials shall be the sole property of the Company.  I agree that during my employment and/or contracting arrangement with the Company, I will not remove any Company Materials from the business premises of the Company or deliver Company materials to any person or entity outside the Company, except as I am required to do in connection with performing the duties of my employment and/or contracting arrangement.  I further agree that, immediately upon the termination of my employment and/or contracting arrangement by me or by the Company for any reason, or for no reason, or during my employment and/or contracting arrangement if so requested by the Company, I will return all Company Materials, apparatus, equipment and other physical property, or any reproduction of such property, excepting only (i) my personal copies of records relating to my compensation; (ii) my personal copies of any materials previously distributed generally to

2

stockholders of the Company; and (iii) my copy of this agreement.

¶ 5 The parties renewed both agreements annually until July 2014. At that point, they were unable to agree on renewal terms, so the parties ended their relationship. However, anticipating that he might end up in litigation over unpaid wages, Bermel breached the PIAA by forwarding to his personal e-mail account (Gmail account) what he described as thousands of BlueRadios e-mails and attachments, some of which contained proprietary information.

¶ 6 Soon after the parties' contract expired, BlueRadios received a demand letter from Bermel requesting $5113.34, which consisted of unpaid wages and expenses he had incurred on behalf of BlueRadios. BlueRadios paid Bermel this amount approximately two months after he sent the demand letter.

¶ 7 Bermel filed the current lawsuit in August 2014, asserting claims for breach of contract, unjust enrichment, and violation of the CWPA, section 8-4-109(1)(a), (b), C.R.S. 2016.

¶ 8 During a subsequent deposition, Bermel revealed to BlueRadios that he had forwarded company e-mails to his Gmail account. As a result, BlueRadios filed counterclaims against him,

including breach of contract; civil theft, under section 18-4-405; and conversion. BlueRadios also requested, and received, a preliminary injunction barring Bermel from "continuing to misappropriate [BlueRadios'] confidential information." Despite this injunction, Bermel continued to access, modify, and delete BlueRadios e-mails that he had forwarded to his Gmail account.

¶ 9 Both parties later filed motions for summary judgment. BlueRadios contended that Bermel was an independent contractor not entitled to the CWPA's protection, and Bermel argued that BlueRadios' civil theft and conversion claims were barred by the economic loss rule.

¶ 10 The court granted summary judgment in favor of BlueRadios on Bermel's CWPA claim, but it denied summary judgment on BlueRadios' civil theft and conversion claims. The parties then proceeded to trial on BlueRadios' counterclaims. After the close of evidence, Bermel moved for a directed verdict on BlueRadios' civil theft claim, again arguing that the economic loss rule precluded such a claim. And, again, the court rejected Bermel's argument, concluding that the economic loss rule does not bar a statutory cause of action.

¶ 11    Following trial, the court entered a written order finding Bermel liable on all of BlueRadios' counterclaims. Pursuant to the civil theft statute, the court awarded attorney fees and $200 in statutory damages on BlueRadios' civil theft claim. It awarded $1 in nominal damages on each of the other claims.

¶ 12    On appeal, Bermel contends that the trial court erred when it (1) denied his motion for summary judgment on BlueRadios' civil theft and conversion claims and (2) granted BlueRadios' motion for summary judgment on his CWPA claim. Before reaching their merits, we first address Bermel's preservation of these arguments.

¶ 13    Although in his motion for summary judgment Bermel raised the issue of the economic loss rule's application to BlueRadios' conversion counterclaim, he did not re-raise it in a motion for directed verdict or in a motion for judgment notwithstanding the verdict. Consequently, he failed to preserve that issue for appeal, so we will not address it. *See, e.g., Top Rail Ranch Estates, LLC v. Walker*, 2014 COA 9, ¶ 44 (a district court's denial of a party's motion for summary judgment is not an appealable order unless the moving party preserves the issue by re-raising it in a later

motion for directed verdict or judgment notwithstanding the verdict).

¶ 14    Bermel did, however, preserve his contentions regarding the application of the economic loss rule to a civil theft claim and the court's summary judgment on his CWPA claim. We address these two contentions in turn.

## II. Standard of Review and Summary Judgment

¶ 15    We review de novo a trial court's ruling on a party's motion for summary judgment. *Armed Forces Bank, N.A. v. Hicks*, 2014 COA 74, ¶ 20. "Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate no issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Olson v. State Farm Mut. Auto. Ins. Co.*, 174 P.3d 849, 852 (Colo. App. 2007).

## III. The Economic Loss Rule and Civil Theft

¶ 16    Bermel first contends that the trial court erred when it concluded that the economic loss rule does not bar BlueRadios' civil theft counterclaim. We are not persuaded.

## A. The Economic Loss Rule

¶ 17    Under the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000).

¶ 18    The Colorado Supreme Court adopted the economic loss rule in *Town of Alma.* In that case, the town contracted with a construction company for "improvements to [the town's] water distribution system." *Id.* at 1258. After discovering defects in the improvements to its water system, the town brought negligence claims against the construction company. *Id.*

¶ 19    The court held that the town's "negligence claim [wa]s based solely on the breach of a contractual duty resulting in purely economic loss, and thus [wa]s barred by application of the economic loss rule." *Id.* at 1266. In doing so, the court recognized that the rule was "originally born from products liability law," but the court held that its applicability was "broader, because it serves to maintain a distinction between contract and tort law." *Id.* at 1262.

¶ 20    In deciding whether the economic loss rule bars a particular claim, *Town of Alma* directs courts to focus on "determining the source of the duty that forms the basis of the action." *Id.* Not only must the duty arise from a source independent of the contract, it must also be a duty that is not memorialized in the parties' contract. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004).

## B. Discussion

¶ 21    We agree with the trial court's conclusion that the economic loss rule does not bar a claim under the civil theft statute.

¶ 22    By its plain terms, the civil theft statute establishes both a cause of action and a remedy for victims of theft: an owner of stolen property "may maintain an action . . . against the taker" to "recover two hundred dollars or three times the amount of the actual damages sustained . . . , whichever is greater, and may also recover costs of the action and reasonable attorney fees." § 18-4-405. Indeed, in interpreting this statute in another context, our supreme court has concluded that "the General Assembly intended the [civil theft] statute to *provide an owner with a private remedy* against the taker that requires proof of a specified criminal act but not proof of

a prior criminal conviction to recover treble damages, fees, and costs." *Itin v. Ungar*, 17 P.3d 129, 134 (Colo. 2000) (emphasis added); *see also In re Marriage of Allen*, 724 P.2d 651, 656 (Colo. 1986) (noting that the legislature enacted the civil theft statute for "a punitive . . . purpose by depriving thieves . . . of the immediate fruits of their criminal activities and by making such persons pay damages that by definition are three times greater than the amount necessary to compensate their victims").

¶ 23    In contrast to this legislatively created cause of action, the economic loss rule — a rule that seeks to maintain the boundary between the law of contracts and torts — is a judicial construct. *See Town of Alma*, 10 P.3d at 1264.

¶ 24    While maintaining the distinction between the law of contracts and torts is no doubt a laudable goal, the economic loss rule is nonetheless a judge-made rule. And that being the case, the economic loss rule cannot preclude a claim under the civil theft statute because the legislature explicitly provided that cause of action, and its attendant remedy, to victims of theft.

¶ 25    Indeed, as the Florida Supreme Court put it in *Comptech*, the leading case on this topic, "the Legislature has the authority to

enact laws creating causes of action. If the courts limit or abrogate such legislative enactments through judicial policies, separation of powers issues are created, and that tension must be resolved in favor of the Legislature's right to act in this area." *Comptech Int'l, Inc. v. Milam Commerce Park, Ltd.*, 753 So. 2d 1219, 1222 (Fla. 1999), *receded from by Tiara Condo. Ass'n v. Marsh & McLennan Cos.*, 110 So. 3d 399, 400 (Fla. 2013) (restricting the economic loss rule's application to products liability cases); *see also Boehme v. U.S. Postal Serv.*, 343 F.3d 1260, 1266 (10th Cir. 2003) ("Colorado's economic loss rule has no application" to a party's claim under the forcible entry and detainer statute, section 13-40-104(1)(d), C.R.S. 2016, because "the Colorado legislature has provided a statutory remedy to landlords"); *Ulbrich v. Groth*, 78 A.3d 76, 102 (Conn. 2013) (the economic loss rule does not bar claims under the Connecticut Uniform Trade Practices Act, overruling prior contrary authority); *Stuart v. Weisflog's Showroom Gallery, Inc.*, 746 N.W.2d 762, 772 (Wis. 2008) (the economic loss rule "cannot apply to statutory claims, including those under the [Home Improvement Practices Act]" because doing so would "ignor[e] the public policies that are the basis for the [act]").

¶ 26    In short, allowing the economic loss rule to preclude a civil theft claim would thwart the legislature's intended goals of (1) punishing thieves, *Marriage of Allen*, 724 P.2d at 656; and (2) "provid[ing] an owner with a private remedy against the taker" of stolen property, *Itin*, 17 P.3d at 134.

¶ 27    In arguing to the contrary, Bermel relies principally on *Makoto USA, Inc. v. Russell*, 250 P.3d 625, 629 (Colo. App. 2009).  In that case, a division of this court was presented with the same issue: the plaintiff argued that "the economic loss rule, as a judicial construct, cannot be applied to preclude a statutory claim."  *Id.*  The court agreed that "if the legislature intended to provide a remedy in addition to a contractual one, the statutory remedy would trump the economic loss rule."  *Id.*  Finding "no indication that the [civil theft] statute was intended to expand contractual remedies,"

11

however, the *Makoto* division concluded that the economic loss rule barred the plaintiff's civil theft claim.[1]  *Id.*

¶ 28     We agree with *Makoto*'s general statement that a private remedy provided by the legislature would trump the economic loss rule.  But we disagree with *Makoto*'s focus on whether the legislature "intended to expand contractual remedies."  *Id.*

¶ 29     In our view, by asking whether the legislature "intended to expand contractual remedies," *id.*, the *Makoto* division incorporated the economic loss rule's policy rationales in its analysis.  We think the inquiry is simply whether the legislature intended to establish a cause of action for victims of theft.  And, in this case, under the

---

[1] The division cited *West v. Roberts*, 143 P.3d 1037 (Colo. 2006), for the proposition that the civil theft statute has been construed narrowly to avoid expanding contractual remedies.  There, the supreme court held that a provision of the Uniform Commercial Code — adopted by the legislature and codified at section 4-2-403, C.R.S. 2016 — had "abrogate[d] the stolen property statute so that 'theft' in that provision does not include any theft in which an owner voluntarily relinquishes property to a thief under a transaction of purchase."  *West*, 143 P.3d at 1045.  We agree that under the facts of *Makoto*, the *West* decision precluded the plaintiff's civil theft claim in that case.  We do not agree however that *West* provides guidance on the issue of whether the economic loss rule can bar a statutory cause of action.  *West* considered whether one legislative enactment abrogated another, whereas here we are considering whether a judicial construct can, in essence, abrogate a statutory cause of action.

plain terms of the statute, it is evident that the legislature intended to do so. Accordingly, we affirm the trial court's conclusion that the economic loss rule does not bar a claim under the civil theft statute.

## IV. Bermel's CWPA Claim

¶ 30    Bermel also contends that the trial court erred in granting BlueRadios' motion for summary judgment on his CWPA claim under section 8-4-109(1)(a), (b). Specifically, he contends that the trial court failed to apply the CWPA's definition of "employee" when it concluded that Bermel was an independent contractor not entitled to the CWPA's protection. We agree.

¶ 31    Under the CWPA, an employee is "any person . . . performing labor or services for the benefit of an employer in which the employer may command when, where, and how much labor or services shall be performed." § 8-4-101(5), C.R.S. 2016. The CWPA goes on to state that

> [f]or the purpose of this article, an individual primarily free from control and direction in the performance of the service, both under his or her contract for the performance of service and in fact, and who is customarily engaged in an independent trade, occupation, profession, or

13

> business related to the service performed is not an "employee."[2]

*Id.*

¶ 32    As we set forth above, BlueRadios filed a motion for summary judgment in which it contended that Bermel could not assert a claim under the CWPA because he was an independent contractor rather than an "employee."  BlueRadios supported its motion with an affidavit from its president, deposition transcripts, and other exhibits.  In the affidavit, the president averred the following:

- From 2009 to 2014, BlueRadios and Bermel annually renewed their "Contractor Agreement."

- BlueRadios gave Bermel "general project assignments"; Bermel "chose the order to perform work, the hours to work and the method for completing project assignments"; BlueRadios did

---

[2] Section 8-70-115(1)(c), C.R.S. 2016, contains a similar definition of employee in the context of unemployment compensation insurance tax liability.  In that context, a multi-factor test, in which no one factor is determinative, is used to assess whether an individual is engaged in an independent business.  *See Indus. Claim Appeals Office v. Softrock Geological Servs., Inc.*, 2014 CO 30, ¶¶ 15, 16.

14

not provid[e] any training to" Bermel; and Bermel "could pick and choose which assignments he wanted to work on."

- "After his deposition, [Bermel] produced a copy of a notebook that he testified he maintained and [that] reflected all of the direction and control he received from BlueRadios."  The president had "reviewed [a] copy of the notebook" and said it "consists primarily of doodles, schematic drawings, personal notes (such as notes on [Bermel's] mortgage) and blank pages. The notebook shows that there was little, if any, direction given to or control exercised over how [Bermel] completed the tasks he was given."

- "In 2014, the Colorado Department of Labor and Employment conducted an audit of BlueRadios for the purpose of assessing whether the independent contractors working with BlueRadios were properly classified" as such.  "The auditor conducted a very extensive and thorough review during which payroll records, time sheets, work assignments, contracts and other documents were reviewed."  The auditor also "conducted several interviews and looked at the amount of oversight and control BlueRadios exercised over contractors.  The Colorado

15

Department of Labor and Employment concluded that independent contractors, including [Bermel], were properly classified as independent contractors and not employees."

¶ 33 In his response, Bermel contended that BlueRadios had cited cases that were inapplicable in determining whether a person was an employee or an independent contractor. Bermel asserted that the proper inquiry was whether he met the statutory definition of an "employee" under section 8-4-101(5). He further maintained that the question whether he was an employee or independent contractor involved disputed issues of material fact, but he did not support his allegations by "affidavits or otherwise" as required under C.R.C.P. 56(e).

¶ 34 The trial court concluded that BlueRadios' "exhibits set forth the way in which [Bermel] was treated by [BlueRadios] [as] — and held himself out via loans and federal tax forms to be — an independent contractor." Thus, because independent contractors may not avail themselves of the CWPA's protections, and Bermel "submitted no rebuttal evidence," the court granted BlueRadios' motion for summary judgment.

¶ 35    We agree with the trial court's conclusion that the evidence attached to BlueRadios' motion for summary judgment, which Bermel did not rebut, established that BlueRadios treated Bermel as an independent contractor. This unrebutted evidence was sufficient to carry BlueRadios' initial summary judgment burden of establishing that Bermel was, "in fact," "primarily free from control and direction in the performance of" his services to BlueRadios. § 8-4-101(5).

¶ 36    But the CWPA requires that the individual be "primarily free from control and direction in the performance of the service, *both under his or her contract* for the performance of service *and* in fact." *Id.* (emphasis added). It also requires that the individual be "*customarily engaged in an independent trade, occupation, profession, or business related to the service performed.*" *Id.* (emphasis added). The evidence attached to BlueRadios' motion for summary judgment, which included the parties' Contractor Agreement, did not establish that Bermel was free from control and direction under his contract or that he was customarily engaged in an independent trade, occupation, profession, or business related to the service performed.

17

¶ 37    The parties' contract contained the following provisions:

> 3.  Rate of Payment for Services.  The Company shall pay Contractor an hourly wage of $27.50/hr. for the services of the contractor, payable at regular payroll periods every 2-weeks.  Company will provide Contractor time recording time sheet that shall be updated daily and signed and dated when submitted by the Contractor to the Company for payment.  As an independent 1099 Contractor[,] the responsibility for any [and] all taxes and social security, etc[.] will be the responsibility of the Contractor.
>
> 4.  Duties and Position.  The Company hires the Contractor in the capacity of Electronics Design Engineer.  The Contractor's duties may be reasonably modified at the Company's discretion from time to time.
>
> 5.  Contractor to Devote Full Time to Company.  The Contractor will devote full time, attention, and energies to the business of the Company, and, during this contract, will not engage in any other related business activity of the Company, regardless of whether such activity is pursued for profit, gain, or other pecuniary advantage [but] Contractor is not prohibited from making personal investments in any other businesses provided those investments do not require active involvement in the operation of said companies.
>
> . . .
>
> 8.  Restriction on Post Contract Compensation. For a period of 2 years after the end of the contract, the Contractor shall not start or have control in any business similar to that

conducted by the company, either by soliciting any of its accounts or by operating within Employer's specific trade business.

¶ 38  In our view, these provisions raise a genuine issue of material fact as to whether Bermel was primarily free from BlueRadios' control and direction in his performance of services under the terms of the parties' contracts, and whether Bermel customarily engaged in an independent trade, occupation, profession, or business related to the services performed.  In particular, under the terms of the contracts (1) BlueRadios required Bermel to "devote full time, attention, and energies to the business of" BlueRadios; (2) Bermel was prohibited from "engag[ing] in any other related business activity of" BlueRadios; (3) BlueRadios retained the right to reasonably modify Bermel's duties at its discretion; (4) BlueRadios contracted to pay Bermel at an hourly rate "payable at regular payroll periods every" two weeks; and (5) Bermel could not operate a business that offered services similar to those conducted by BlueRadios for two years after the conclusion of the Contractor Agreement.  Accordingly, BlueRadios failed to carry its burden of establishing that no genuine dispute of material fact existed as to whether, under the parties' contracts, Bermel was an employee for

purposes of the CWPA. We therefore reverse the trial court's grant of summary judgment on Bermel's CWPA claim.

¶ 39 In reaching this conclusion, we acknowledge that the parties could have provided better analysis in their summary judgment briefing to the trial court. BlueRadios did not cite the CWPA's definition of an employee, and Bermel did not support his response to BlueRadios' motion for summary judgment with any evidence. Nonetheless, BlueRadios failed to carry its initial summary judgment burden of establishing that Bermel was not an employee as that term is defined under section 8-4-101(5). Accordingly, reversal of the summary judgment on the CWPA claim is required.

## V. Appellate Attorney Fees

¶ 40 Finally, BlueRadios contends that it should be awarded its attorney fees on appeal under the theft statute, section 18-4-405, and under the CWPA, section 8-4-110, C.R.S. 2016. We agree that BlueRadios is entitled to its appellate attorney fees under the civil theft statute. We therefore exercise our discretion under C.A.R. 39.1 to remand this issue to the trial court to determine and award the total amount of BlueRadios' reasonable fees incurred in litigating the civil theft issue on appeal. *Payan v. Nash Finch Co.,*

2012 COA 135M, ¶ 63. In light of our reversal of the trial court's grant of summary judgment on Bermel's CWPA claim, however, we need not address BlueRadios' request for appellate attorney fees under section 8-4-110.

## VI. Conclusion

¶ 41 The summary judgment on the CWPA claim is reversed. The judgment is affirmed in all other respects. The CWPA claim is remanded for further proceedings consistent with this opinion and for determination of BlueRadios' reasonable fees under the civil theft statute.

JUDGE TERRY concurs.

JUDGE BERGER specially concurs.

JUDGE BERGER, specially concurring.

¶ 42    I agree with the division's disposition of this appeal and almost all of its analysis. My only departure is that I do not believe that BlueRadios met any part of its summary judgment burden on the CWPA claim.

¶ 43    As the division recounts, BlueRadios supported its summary judgment motion with extensive evidence, including an affidavit from its president. While Bermel responded to the summary judgment motion, and contended that there were disputed issues of material fact that precluded summary judgment, he did not, as C.R.C.P. 56(b) permits (and sometimes requires), submit any evidence in opposition to the summary judgment motion.[1]

---

[1] Unless the summary judgment movant meets her initial burden, the responding party has no duty to submit any evidence in opposition to the motion. *People v. Wunder*, 2016 COA 46, ¶ 43. The mere fact that the moving party submits evidence in support of the motion does not, by itself, compel the opposing party to counter with evidence. *Id.* Only if the moving party demonstrates that there are no disputed issues of material fact and that it is entitled to summary judgment as a matter of law does the responsibility devolve upon the opposing party to submit evidence. *Id.* While it surely is risky for the opposing party to fail to present evidence in opposition, he is not required to do so unless the moving party first meets her burden. *Id.*

¶ 44    The division holds that the "unrebutted evidence [submitted by BlueRadios] was sufficient to carry BlueRadios' initial summary judgment burden of establishing that Bermel was, 'in fact,' 'primarily free from control and direction in the performance of'" his services to BlueRadios.

¶ 45    I disagree with this conclusion. In my view, BlueRadios did not meet any part of its summary judgment burden. The trial court had before it during the summary judgment proceedings the parties' contract. Several provisions in that contract (addressed by the division in connection with its conclusion that BlueRadios did not meet its summary judgment burden regarding control of Bermel by BlueRadios "under his or her contract") are relevant both to the control exercised by BlueRadios in fact as well as control that could be exercised under the contract.

¶ 46    Contractual provisions that impose restrictive covenants upon a worker, both during the service of the worker and after termination of the relationship, speak not only to hypothetical control, but control in fact. While it is possible that BlueRadios could have waived those restrictions, making them inconsequential in connection with the "in fact" inquiry, nothing in the summary

judgment record so indicates. Thus, in my view, BlueRadios did not meet any part of its summary judgment burden and the trial court should have denied the motion in its entirety.

¶ 47 Other than this relatively minor disagreement, I join the division's opinion.